ELIJAH R. CRAFT

*v.*

INDIANA, DECATUR AND WESTERN RAILWAY COMPANY.

*Filed at Springfield May 11, 1897.*

1. MORTGAGES—*validity of execution of power of sale by trustees succeeding those originally named.* Trustees lawfully appointed to succeed deceased trustees originally appointed in a deed of trust, may execute a power of sale thereunder without an additional written conveyance of the property to them, where the deed provides that upon the death of the trustees named therein the same title and powers vested in them shall vest in their successors.

2. SAME—*section 14 of Mortgage act does not apply to railroads.* Section 14 of the act on mortgages, (Rev. Stat. 1874, p. 713,) concerning the giving of notice of sales under powers contained in mortgages and deeds of trust in the county where the mortgaged property is located, does not apply to a sale under a mortgage of a line of railroad extending through several counties.

3. SAME—*trustees in doubt as to their duties may apply to equity.* Trustees who are in doubt as to the performance of their duties under the deed of trust, or as to the manner of exercising the powers thereby conferred upon them, may apply to a court of general equity jurisdiction for its aid and direction.

4. JURISDICTION—*general rule as to jurisdiction of courts over specific property.* Where the subject matter of a suit is specific property, and the relief, when granted, must act directly upon property and not upon the person of the defendant, jurisdiction must be exercised in the State where the subject matter is situated.

5. SAME—*when it is immaterial that the res is beyond court's jurisdiction.* Where a court of equity has jurisdiction of the parties, it is immaterial that the *res* in controversy, whether real or personal property, is beyond its territorial jurisdiction, and it may compel the parties to do all things according to the *lex loci rei sitæ* which they could voluntarily do to give full effect to the decree rendered.

6. SAME—*court of equity may decree sale of railroad extending beyond its territorial jurisdiction.* A court of general equity jurisdiction, having jurisdiction of the parties, has power to decree sale of a line of railroad in accordance with the terms of the power in the trust deed, although the road extends beyond its territorial jurisdiction.

7. INJUNCTION—*equity, on decreeing removal of cloud, may enjoin defendants from asserting title.* A court of general equity jurisdiction, on decreeing certain mortgages to be a cloud on complainant's title and ordering their removal, may enjoin the defendants from afterward setting up or attempting to enforce the same.

APPEAL from the Circuit Court of Edgar county; the Hon. FERDINAND BOOKWALTER, Judge, presiding.

HENRY CRAWFORD, H. VANSELLER, and WILLIAM R. CRAWFORD, for appellant:

A mortgage does not ripen into a title, and cannot destroy or bar the equity of redemption of the owner or a junior mortgagee, until there has been a judicial, confirmed sale of the property under the decree of some court within whose territorial jurisdiction the property is situate, or the mortgaged premises have been sold and conveyed under the exercise of a power of sale, lawfully created and binding the estate, and executed strictly, literally and precisely. *Willets* v. *Burgess*, 34 Ill. 494; *Tennery* v. *Nicholson*, 87 id. 465; *Insurance Co.* v. *White*, 106 id. 67; *Bearss* v. *Ford*, 108 id. 16.

The first purchaser under an attempted, but inoperative or void, foreclosure, stands in the shoes of the mortgagee, and can only assert the liens and equities of the latter. *Blair* v. *Rivard*, 19 Ill. 477; *Strong* v. *Allen*, 44 id. 428; *Morgan* v. *Clayton*, 61 id. 35.

There is neither warranty nor estoppel at sales under judicial decrees or by the exercise of powers. The purchaser is conclusively presumed to have ascertained the exact nature of the title to be acquired under the proceeding, and having assumed all risk of title at such sale he can have no relief in equity. *Morris* v. *Hogle*, 37 Ill. 150; *Holmes* v. *Shaver*, 78 id. 578; *Roberts* v. *Hughes*, 81 id. 130; *Meyer* v. *Mintonye*, 106 id. 414.

Each of the several States is sovereign over the real estate within its own territory, and all titles, liens and trusts therein, including their creation, interpretation and enforcement, and has exclusive dominion over all domestic corporations and franchises which are created by the exercise of its own supreme legislative action. *Brine* v. *Insurance Co.* 96 U. S. 627; *McGoon* v. *Scales*, 9 Wall. 23; *United States* v. *Fox*, 94 U. S. 35.

The property in Illinois to which the defendants claim absolute title under an Indiana decree and a New York sale, is declared by our constitution and statute law to be a public highway of the State, exercising sovereign franchises, created by a grant of this State, and, consequently, not subject to the judicial or legislative control, regulation, *in invitum* sale or alienation of any other State whatever. *Fanning* v. *State*, 102 N. Y. 441; *Railroad Co.* v. *Mayes*, 49 Ga. 355.

When the subject matter of the suit is specific property, and the relief, when granted, is such that it must act directly upon the subject matter and not upon the person of the defendant, the jurisdiction must be exercised in the State where the subject matter is situated. 3 Pomeroy's Eq. Jur. sec. 1318.

A decree cannot operate beyond the State in which the jurisdiction is exercised. It is not in the power of one State to prescribe the mode in which real property shall be conveyed in another. *Watts* v. *Waddle*, 6 Pet. 400.

CHARLES ROBINSON SMITH, (JOHN S. MILLER, of counsel,) for appellee:

A power of sale in a mortgage covering an inter-State railway may be exercised by the trustees named in the mortgage and the sale may be made at the place named in the mortgage. *Ingle* v. *Jones*, 43 Iowa, 286.

If the instrument of trust provides for the vesting of the estate in the remaining, surviving or new trustees upon the removal, resignation, death and appointment of others, the trust estate will vest according to the provisions of the instrument. 1 Perry on Trusts, sec. 284.

A party may exercise a power of sale without having the legal title. *Merrin* v. *Lewis*, 90 Ill. 505; *Pardee* v. *Lindley*, 31 id. 174; *Hamilton* v. *Lubukee*, 51 id. 415; *Strother* v. *Law*, 54 id. 413; *Mason* v. *Ainsworth*, 58 id. 163.

The judgment of another State is a domestic judgment, and has precisely the same effect in Illinois as an

Illinois judgment.    *Welch* v. *Sykes*, 3 Gilm. 197; *Bimeler* v. *Dawson*, 4 Scam. 536; *Graceland Cemetery Co.* v. *People*, 92 Ill. 619; *Ruegger* v. *Railway Co.* 103 id. 449; *Rust* v. *Frothing-ham*, Breese, 258; *Hamilton* v. *Quimby*, 46 Ill. 90; *Rogers* v. *Higgins*, 57 id. 244; 1 Greenleaf on Evidence, sec. 548.

Decrees in equity operate only on the person, and suits will be entertained although the subject of the suit is situated in another State.    *Wilson* v. *Joseph*, 107 Ind. 491.

Equity will enforce specific performance of a contract for lands outside its jurisdiction.    *Enos* v. *Hunter*, 4 Gilm. 211; *Cooley* v. *Scarlett*, 38 Ill. 316.

A court of equity may enjoin persons from suing in other States or from prosecuting suits already begun there.    *Cole* v. *Cunningham*, 133 U. S. 107.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On December 31, 1875, the Indianapolis, Decatur and Springfield Railway Company executed to Emmett and Crane, trustees, a mortgage to secure the payment of bonds, to the amount of $1,800,000, on its one hundred and fifty-two miles of railroad from Decatur to Indianapolis, "together with its equipments, appliances, franchises, rents, issues and profits."    In the year 1887 the property passed to the Indianapolis, Decatur and Western Railway Company, subject to said mortgage, and on January 2, 1888, the latter company executed three mortgages covering the same property described in the first, to the Farmers' Loan and Trust Company of New York and Noble T. Butler, as trustees, to secure $138,250 first, $1,382,500 second, and $774,200 income bonds.    On the 10th of May, 1894, the property was sold in the city of New York under the first mortgage and purchased by George Sherman.    Subsequently he conveyed the Illinois end of the line to the Decatur and Eastern Railway Company, and the Indiana end to the Indiana, Decatur and Western Railway Company.    Elijah R. Craft being the holder of the bonds secured by the mortgages of 1888, filed his bill

in the circuit court of Edgar county, alleging that the sale of the Illinois end of said railroad under the first mortgage was illegal and void, and asking the court to decree that the Decatur and Eastern Railway Company took no title thereto by its deed from Sherman, praying a foreclosure of the 1888 mortgages, and that he be allowed to redeem from the first mortgage after an accounting. The Indianapolis, Decatur and Western Railway Company, mortgagor in the three mortgages, Sands and Peirce, successor trustees under the first mortgage, the trust company and Butler, trustees in the three mortgages, and the two corporations claiming under the conveyances from Sherman, were made defendants. These two companies alone answered the bill, and pending the litigation they were consolidated under the name of the Indianapolis, Decatur and Western Railway Company. This consolidated company adopted the answers filed by the individual companies, and also filed a cross-bill, claiming the absolute title to the property by virtue of the sale under the first mortgage, alleging that the mortgages of 1888 clouded its title, and praying that the same be removed as such, and that Crafts, the complainant in the original bill, be perpetually enjoined from setting up and attempting to enforce such mortgages. Upon a hearing the circuit court dismissed the original bill for want of equity and granted the prayer of the cross-bill. Crafts prosecutes this appeal.

The issue formed by the pleadings, which constitutes the material question, is, was the sale of the property under the mortgage of 1875 legal, and binding on the holders of the indebtedness secured by the junior mortgages of 1888. All that is said in the argument of counsel for appellant as to the invalidity of the first mortgage is foreign to the case made by their bill. They not only treat that mortgage as valid by their allegations, but admit it by asking to be allowed to redeem therefrom. Appellee bases the validity of the sale to Sherman, first,

upon the power contained in the mortgage; second, the execution of that power under the directions of the Superior Court of Marion county, Indiana, on the application of the trustees; and third, a valid decree of foreclosure by said Superior Court. The substantial objections by appellant to the sale under the power are, that it was not made by legally appointed trustees; that it was made in New York, without the publication of proper notices in Illinois, and the absence of any written appointment of or conveyance to the parties who acted as trustees, vesting in them any title, estate, trust or power in the Illinois property or connecting them with the 1875 mortgage. As to the other grounds upon which appellee relies, appellant insists the Superior Court of Marion county, Indiana, was without jurisdiction as to the mortgaged property situated within this State.

The original trustees named in the mortgage were James Emmett and John J. Crane, and it was provided in the deed that in the event of the death of either of them the board of directors of the first party should appoint a new trustee in his place, and in case it neglected to do so, or the person appointed by it was unsatisfactory to them, the holders of a majority in amount of the bonds therein secured should make the appointment. Emmett died prior to February 27, 1885, and on that day the board of directors of the railway company, by a resolution adopted at a duly convened meeting, appointed Benjamin A. Sands in his stead. Subsequently Crane also died, and the same board, on November 22, 1888, by like resolution, appointed Robert B. F. Peirce to succeed him. Afterwards, in the year 1890, the holders of a majority in amount of the bonds secured by the mortgage, by a statement in writing, also appointed the same parties successor trustees to Emmett and Crane, deceased.

Counsel for appellee, in their argument, devote considerable time and space to maintaining the validity of powers of sale in such mortgages; but that general prop-

osition is not denied by appellant. Nor do we understand it to be claimed that such a deed may not lawfully provide for the appointment of successor trustees to execute such power. The question raised is, were these successors appointed in conformity with the provisions of the mortgage? We see no reason for holding they were not. We also think the position that no title to the property or power to execute the trust vested in them as successors for want of a written conveyance to them, untenable. By the terms of the deed the same title and power which were conferred upon the original trustees vested in their successors, when lawfully appointed. (1 Perry on Trusts, sec. 284; _West_ v. _Fitz,_ 109 Ill. 425; _Lake_ v. _Brown,_ 116 id. 83.) Sands and Peirce had the same power and authority to make the sale of May 10, 1894, that the original trustees would have had if living.

It is not denied that the place of sale (the city of New York) and the notice thereof were in strict conformity with the requirements of the power, but it is insisted, nevertheless, under the provisions of section 14 of chapter 95 of the Revised Statutes, the property in Illinois could only have been lawfully made in this State upon a notice reciting the amount of indebtedness the instrument was intended to secure and the amount claimed to be due, and for which the sale was to be made. The section of the statute cited provides: "In all sales of real estate under a mortgage, or trust deed in the nature of a mortgage, * * * thirty days' previous notice of such intended sale shall be given, whether so specified in the power of sale or not, * * * and no sale shall be made except in the county in which the premises are situated. The notice shall be given by publication once in each week for four successive weeks, in some newspaper or other paper authorized by law to publish legal notices, published in the county or counties where the premises are situated, or if no paper is published in such county, the nearest newspaper published in this State,

but in no case shall a notice be given for a shorter time
than is required by the mortgage or deed of trust."

Manifestly, this provision in our statute was not in-
tended to apply to the sale of a line of railroad, with its
equipments, franchises, etc.   It is well known that the
location of such property is rarely confined to a single
county.    It is not, strictly speaking, "real estate" or
called "premises," as those terms are used in the statute.
We said in *Peoria and Springfield Railroad Co.* v. *Thompson*,
103 Ill. 187 (on p. 208): "Now, while a railroad franchise,
when considered by itself, will be treated as personal
property, and the road itself, when so viewed, will be
treated as realty, yet when considered as an entirety,
as they must be when so mortgaged and sold, they are,
strictly speaking, neither the one nor the other, within
the meaning of the law pertaining to redemptions."   To
apply the statute to railroad property like this, it would
be necessary to give notice and sell in every county
through which the line of road extended, which, as can
readily be seen, would be wholly impracticable.

We are unable to see wherein appellant has shown
the sale to Sherman to be invalid, as made under the
power contained in the mortgage of 1875.   The fact that
it was made in obedience to a decree of court, especially
if that decree was void, as is contended, would not ren-
der it nugatory as a sale under the power, if made in
conformity with the requirements of the deed.   But we
entertain no doubt that the sale was legal and valid, as
made in pursuance of the decree of a court of competent
jurisdiction.

The objection to the jurisdiction of the Indiana court
in the *Sands-Peirce case*, to affect by its decree the Illinois
end of the railroad, is based upon the theory that the
action was a proceeding *in rem*, and counsel invoke the
rule that "when the subject matter of the suit is specific
property, and the relief, when granted, is such that it
must act directly upon the subject matter and not upon

the person of the defendant, the jurisdiction must be exercised in the State where the subject matter is situated." (3 Pomeroy's Eq. Jur. sec. 1318.) The general equity jurisdiction of the Indiana court is not questioned nor is the regularity of its proceedings in any way criticised. On the contrary, it is expressly admitted that "in so far as those judicial proceedings relate to the railroad in Indiana there can be no question as to the completeness of the jurisdiction over the subject matter, and that the decree, sale and master's conveyance divested the title of the Indianapolis, Decatur and Western Railway Company, and extinguished the mortgage liens created by that company in 1888 on all its property in Indiana." And again: "Undoubtedly the Indiana suit was distinctly effective as an *in rem* adjudication, so far as the railroad within that court's own territorial jurisdiction is concerned. As to that property the judicial sale and conveyance passed a perfect title, and extinguished all subsisting ownership and liens solely because of jurisdiction over the *res*, which was the subject of controversy." With this repeated and clearly expressed position, it seems to us the argument may be greatly simplified by confining it to the only controverted question: Had the Superior Court jurisdiction to foreclose the mortgage on the Illinois part of the road, or to direct the trustees to make the sale under the power contained in the mortgage?

The general rule relied upon by counsel for appellant as to the jurisdiction of courts over property in other counties or States is well established. The question here is, can that rule be properly applied to this case. The suit was brought by Sands and Peirce, as trustees, in July, 1889. The Indianapolis, Decatur and Springfield Railway Company, the Indianapolis, Decatur and Western Railway Company, and the Farmers' Loan and Trust Company of New York and Noble C. Butler, trustees under the three junior mortgages, were made defendants. The execution of the mortgage of 1875, the indebtedness

to secure which it was given, default in payment thereof, notice by bondholders to foreclose, death of the original trustees, and the appointment of petitioners as their successors, were fully set forth in the petition. It stated that doubts existed as to the power of the trustees to legally sell the mortgaged property without the authority of a decree of a court of equity, and that by reason thereof the highest and best or reasonable value of the property could not be realized unless the sale should be made with the direction, approval and sanction of a court of equity having jurisdiction in the matter. It also set up the fact that prior to their taking possession of the road the Indianapolis, Decatur and Western Railway Company had become and still was indebted to various claimants for operating expenses, who insisted on being paid out of the proceeds of the sale of the property, and that they, the trustees, were unable to determine the equity or priority of such claims without the aid of the court. The directions of the court were asked as to the liquidation of those claims, and that the petitioners be ordered to make a sale of said property and franchises to the highest and best bidder, "at the place mentioned in said first mortgage, or at such other place as the court might appoint, upon the notice designated in said first mortgage and such additional notice as the court may direct, if any, pursuant to the power of sale contained in said mortgage;" that they be directed to report the sale, and if confirmed by the court, they be authorized and required to convey the property and franchises by proper deed to the purchaser, and the proceeds adjusted by the court; that each and all of the defendants, and all persons claiming by, from or under them, be barred and foreclosed of and from all right and equity of redemption in the property. The defendants having answered, the cause was heard upon proof, and a decree rendered as prayed. The facts alleged in the petition were recited in the decree and found to be true, and the petitioners, Sands and Peirce,

authorized and directed to make the sale of the property, both by virtue of the power of sale contained in the mortgage and as the special master of the court, the sale to be in the city of New York, upon notice published in two daily newspapers published in the city of New York, as provided in the power of sale, and also in certain newspapers published in the State of Indiana. The order was, that the entire property, appurtenances and franchises described in the decree should be offered and sold as one parcel, and not subject to redemption. The sale having been made and reported to the court, the same was confirmed and the trustees ordered to convey the property to Sherman, the purchaser, and it was ordered that the "defendants, except the First National Bank of Indianapolis, Indiana, and each and every of them, be * * * and they are hereby forever enjoined and restrained from claiming any of the property covered by the mortgage in suit, wheresoever situated, or any interest therein, purporting to be conveyed by the deed of said trustees."

It being admitted that this decree, sale and master's conveyance divested the title of the Indianapolis, Decatur and Western Railway Company, "and extinguished the mortgage lien created by that company in 1888 on all its property in Indiana," did they not have a like effect on that in Illinois? We think the authorities clearly hold that they did. The leading case is *Miller* v. *Dows*, 94 U. S. 444. That action arose in the circuit court of the United States for the district of Iowa, by bill to foreclose a mortgage on the Chicago and Southwestern Railway Company, a part of which was in Missouri, as stated in the opinion of the court by STRONG, Judge. The court decreed as follows: "The court decreed a sale of the entire property covered by the mortgage, and directed the master, who was ordered to make the sale, to execute a good and sufficient deed or deeds to the purchaser. It also declared that after the sale both the defendant corporations and the complainants, trustees named in the mort-

gage, as well as all persons claiming under them or either of them, be barred and foreclosed from all interest, estate, right, claim or equity of redemption of, in and to the property, reserving, however, the rights of the holders of the bonds and coupons secured by the first mortgage then remaining outstanding and unpaid. It directed that the two defendant corporations should surrender to the purchaser the property sold and conveyed, upon the execution, approval and delivery of the master's deed, and that as further assurance the Chicago and Southwestern Railway Company should, on the approval and delivery of the master's deed, convey all the property therein described to the purchaser by their good and sufficient deed. If such a foreclosure and sale cannot be made of a railroad which crosses a State line and is within two States, when the entire line is subject to one mortgage, it is certainly to be regretted, and to hold that it cannot be would be disastrous not only to the companies that own the road, but to the holders of bonds secured by the mortgage. Multitudes of bridges span navigable streams in the United States—streams that are boundaries of two States. These bridges are often mortgaged. Can it be that they cannot be sold as entireties by the decree of a court which has jurisdiction of the mortgagors? A vast number of railroads, partly in one State and partly in an adjoining State, forming continuous lines, have been constructed by consolidated companies and mortgaged as entireties. It would be safe to say that more than one hundred millions of dollars have been invested on the faith of such mortgages. In many cases these investments are sufficiently insecure at the best. But if the railroad, under legal process, can be sold only in fragments; if, as in this case, where the mortgage is upon the whole line and includes the franchises of the corporation which made the mortgage, the decree of foreclosure and sale can reach only the part of the road which is within the State, it is plain that the property must be

comparatively worthless at the sale. A part of the railroad may be of little value when its ownership is severed from the ownership of another part and the franchise of the company is not capable of division. In view of this, before we can set aside the decree which was made, it ought to be made clearly to appear beyond the power of the court. Without reference to the English chancery decisions, where this objection to the decree would be quite untenable, we think the power of courts of chancery in this country is sufficient to authorize such a decree as was here made. It is here undoubtedly a recognized doctrine that a court of equity sitting in a State, and having jurisdiction of the person, may decree a conveyance by him of land in another State, and may enforce the decree by process against the defendant. True, it cannot send its process into that other State, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title; and there seems to be no reason why it cannot, in a proper case, effect the transfer by the agency of the trustees, when they are complainants."

The law of this case has since been frequently recognized and followed by the same court. The decisions of the courts of Pennsylvania, New York, Connecticut, Indiana and other States are to the same effect. The doctrine is reasonable and just to all parties interested in such mortgages. In fact, we are unable to see how the benefit of the security in such cases could otherwise be given to the holders of the indebtedness. That it could ever operate injuriously to the rights of the mortgagors cannot be conceived.

We think the decree of the Superior Court of Marion county had the same effect upon the mortgaged property west of the State line that it had upon that east of it.

The sale is also valid as made by trustees, under the direction of a court of general chancery jurisdiction, in the exercise of the power conferred upon them by the

mortgage. We do not understand it to be denied that the Superior Court of Marion county, Indiana, is a court of general equity jurisdiction. The trustees, if in doubt as to the performance of their duties, had a right to apply to such a court for its aid and direction. (2 Jones on Mortgages, sec. 1770.) While the petition of the trustees may be regarded as a proceeding to foreclose, it was also good as asking such aid and direction, and the decree was a proper exercise of equity jurisdiction upon the trustees, personally, directing the sale. In such case it is manifestly immaterial that a part of the line of road was in another State. *Enos* v. *Hunter*, 4 Gilm. 211, was a bill filed in the circuit court of Sangamon county to compel the defendant to execute a trust by conveying lands lying in Madison county, and it was insisted the court was without jurisdiction because the land was in another county. But this court said (p. 214): "Where the relief sought could be effected by acting directly upon the person of the defendant, the court of chancery has never hesitated to entertain the bill where the defendant is found within its jurisdiction, whether the subject matter of the controversy be within its control or not." In *Penn* v. *Lord Baltimore*, 1 Ves. Sr. 444, it was held that the court of chancery in England had jurisdiction to enforce the specific performance of an agreement between the proprietors of Pennsylvania and Maryland relating to the boundaries of those colonies. Other cases to the same effect are found in the English Chancery Reports. See, also, *Johnson* v. *Gibson*, 116 Ill. 294, and cases cited; *Baker* v. *Rockabrand*, 118 id. 365.

When the necessary parties are before a court of equity it is immaterial that the *res* of a controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitæ*, which he could do voluntarily to give full effect to the decree against him. (*Phelps* v. *McDonald,*

99 U. S. 298.)   The language of WOOD, J., in *Wilmer* v.
*Atlanta, etc. Railroad Co.* 2 Wood, 447, is peculiarly appli-
cable here: "We are not asked to foreclose a mortgage.
We are not asked to confer on the trustees any power
which they do not already possess by virtue of the deed
of trust, or to impose upon them any new duties, but sim-
ply to tell them what their powers are under their deed,
and require them to exercise their powers for the benefit
of the *cestuis que trust.*   *   *   *   The railroad, with its
appurtenances, is in the nature of an entirety, and con-
stitutes one and a continuous line, and its unity and con-
tinuity are the most important elements of its value."

The jurisdiction of the court to enjoin the defendants
from asserting title, etc., under the mortgages of 1888, is
clearly sustained by *Sercomb* v. *Catlin*, 128 Ill. 556, and the
authorities there cited.   (*Alexander* v. *Tolleston Club*, 110
Ill. 65.)   In our opinion the sale of May 10, 1894, and the
deed made in pursuance thereof, effectually passed to
Sherman the title to the line of railroad, together with
its franchises, etc., from Decatur to Indianapolis, upon
either one of the three grounds stated.

The argument of counsel for appellee seems to have
reference to that filed on behalf of appellant, and dis-
cusses at length questions not controverted, and which
we have not deemed it necessary to notice.

It is said that the circuit court erred in granting the
affirmative relief prayed in the cross-bill.   The court
unquestionably had jurisdiction to grant that relief, and
we are unable to see wherein it was inequitable or unjust
to do so.

If we are right in our conclusions as to the validity
of the sale to Sherman, appellee is the absolute owner of
the property, and the decree removing appellant's claim
as a cloud thereon can work no injury to appellant.

On the whole record we think the circuit court de-
cided properly, and its decree will be affirmed.

*Decree affirmed.*