## VOORHIES v. VOORHIES et al.

(Supreme Court, Special Term, Kings County.   January 11, 1910.)

1. RECORDS (§ 9*)—REGISTRATION OF TITLE—EVIDENCE.

Under Real Property Law (Consol. Laws, c. 50) art. 12, relating to registry of title to real property, and providing that the summons shall have the form and shall be served as prescribed for summons in a Supreme Court, and that the action shall proceed according to the laws of the state as far as applicable, an action to register title is governed by the same rules of evidence as any action in equity.

[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. RECORDS (§ 9*)—REGISTRATION OF TITLE—EVIDENCE—EXAMINER'S CERTIFI-
CATE AND ABSTRACT.

Real Property Law (Consol. Laws, c. 50) art. 12, provides that, on ap-
plication for registration of title, the official examiner's certificate of title
shall be filed with the complaint. Section 385 provides that, on the com-
plaint and the other papers held by the registrar, the court shall, if plain-
tiff appears to have a title that should be registered, make an order di-
recting that the action to register be commenced by the issuance of sum-
mons, and that such action shall proceed according to laws of the state
so far as applicable. *Held,* that the official examiner's certificate and ab-
tract of title are not evidence of title on the hearing to establish title.

[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

3. TRUSTS (§ 284*)—TRANSFER OF PROPERTY—POWER OF TRUSTEE.

Where property was conveyed in trust for the payment of the income to
beneficiaries, with power in the trustee to sell the property at any time
for such price as he might deem proper, with power to invest the pro-
ceeds for the use of the beneficiaries, he was authorized to transfer the
property to the beneficiaries.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 405; Dec. Dig. §
284.*]

4. DEEDS (§ 96*)—RECITALS—EVIDENCE AS TO CONSIDERATION.

Recitals in a deed to that effect are presumptive evidence of payment
of consideration.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 260; Dec. Dig. §
96.*]

5. TRUSTS (§ 201*)—SALE OF PROPERTY—CONSIDERATION.

A trustee, having power to sell property at a private sale, conveyed
the same to the beneficiary, and the latter obtained money on two mort-
gages, which were subsequently foreclosed and the property sold. There-
after the trustee for a stated consideration conveyed the premises to the
purchaser at the foreclosure sale. *Held,* that the purchaser obtained a
valid title under the trustee's deed, though it was not shown that the
consideration named was paid directly.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 270; Dec. Dig. §
201.*]

Application to register title by Albert V. B. Voorhies against John
James Voorhies and others. Application granted.

Reeves, Todd & Swain, for plaintiff.

Edward R. O'Malley, Atty. Gen., and Amos H. Stephen, Sp. Atty.
Gen., for the State.

Frederick S. Lyke, guardian ad litem.

CRANE, J. . The question has been raised at the outset in this case
as to whether the certificate, searches, and abstract of title of the offi-
cial examiner are prima facie proof, in and of themselves, of the chain
of title. By no rules of evidence that I know of is the abstract of title
made by a searcher evidence in a court of law or equity, and I do not
consider that article 12 of the real property law (Consol. Laws, c. 50),
providing for registry of title to real property, makes it such. The
title registration law provides for the appointment of certain lawyers
or corporations to be official examiners of title, and on application for
registration the official examiner's certificate of title shall be filed with
the complaint as an exhibit and a part thereof. This certificate shall
set forth the exact state of the title sought to be registered in the ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion, the names and addresses of all persons claiming rights in the property, and accompanying it shall be the abstract of title and the searches made or used by the official examiner; also all other proper evidences of due examination and all original muniments of title within the plaintiff's control. A survey, map, or plan of the land must also be filed with the complaint. Section 385 reads as follows:

"On the complaint and on all the other papers and documents filed with the registrar in the making of the application for registration, the court shall determine whether or not the plaintiff appears to have a title that should be registered. * * * When the court is satisfied that the plaintiff appears to have a title that should be registered, it shall make an order directing that the action to register such a title be commenced by the issuance of the summons. * * * The summons shall have the form and shall be served in the manner prescribed by the Code of Civil Procedure for a summons in an action in the Supreme Court. * * * The action shall be governed by, and shall proceed according to, the laws of this state, and the rules of court relative to an action in the Supreme Court as far as the same are applicable, and are not abrogated or modified by this article."

In section 391 is the statement that:

"No judgment of registration shall be made unless the court is satisfied that the title to be registered accordingly is free from reasonable doubt."

It seems apparent that after the service of the summons the action to register title is to proceed like any other action in equity and governed by the same rules of evidence. It is referred to in other jurisdictions as a suit in chancery. While, therefore, the official examiner's certificate and abstract of title are prima facie evidence, sufficient, if satisfactory, to justify the court in ordering the issuance of the summons, they are not made evidence of title upon the trial or hearing in court or before a referee to establish title. On the trial or hearing the same rules of evidence apply as in actions of trespass or ejectment where title is in issue. Abstracts of title or certificates of title companies have never been received in evidence; but the deeds or the records, judgment rolls, and the like have always been offered to prove and establish the chain of title. Whether or not the Legislature could give to an official examiner's certificate or to his abstract the force of evidence is not necessary for me to determine, although in Ohio it has been held that the Legislature cannot under our constitutional form of government delegate judicial authority to examiners. State v. Guilbert, 56 Ohio St. 575, 47 N. E. 551, 38 L. R. A. 519, 60 Am. St. Rep. 756, disapproved in Tyler v. Court of Registration, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433.

I take it that there could be no objection to making the certificate of the examiner evidence so far as it stated the facts on record, without determining their legal effect. However, as I have said, this question is not before me, as the act referred to does not attempt to make the examiner's certificate and abstract evidence of title upon the trial. That such abstract is not evidence has been held even in jurisdictions where the examiner acts like a master in chancery, selected by the court, and not by a party. Glos v. Hallowell, 190 Ill. 65, 60 N. E. 62.

In Glos v. Cessna, 207 Ill. 69, 69 N. E. 634, on a hearing before the examiner, the applicant offered in evidence an abstract of title. Said the court:

"There was no evidence whatever to authorize the admission of abstracts or a book of abstracts in evidence. There was no evidence that the original deeds * * * were lost or destroyed, or that the abstract book was on file in the office of the recorder. The book was not identified in any way, and there was nothing to show that it was a public record, if it would have been admissible when so proved. The act for registering title may be of a progressive nature, but not to the extent of abrogating rules of evidence and permitting the introduction of abstracts without proper foundation being laid."

See, also, Glos v. Holberg, 220 Ill. 167, 77 N. E. 80; Starrett v. Lord, Mass. Land Court Decisions, 197.

On the trial the plaintiff applicant offered in evidence the papers on file in the registrar's office as sufficient proof of title, but in deference to my ruling as here expressed the case has been reopened and the proper proof supplied. The only reason, therefore, for thus stating my opinion of the law is that, if deemed correct, it may be followed in subsequent applications, the procedure being as yet unsettled by practice, or, if it were intended to give the official examiner's work the nature of a referee's report, that the Legislature may so amend the act as to express this clearly.

It is claimed that this title is defective because of a trust created in 1874, still in existence, for the benefit of unknown heirs. On May 11, 1874, John James Voorhies and wife conveyed to John Kowenhoven property including that in question to hold in trust for purposes expressed in substance as follows: To collect the rents and income, apply the same to the use of the parties of the first part during their natural lives, and, upon the death of the said John James Voorhies and his wife, then to convey to the heirs of said John James Voorhies all the property remaining in the hands of the trustee, and upon a further trust to sell and convey the whole of the estate at public or private sale, in the discretion of the trustee, for such price as he may deem proper, and to invest the proceeds, and apply from time to time such portion of the proceeds as he may deem proper for the use and benefit of John James Voorhies and his wife. On the 25th day of January, 1875, or about eight months thereafter, the said trustee, by quitclaim deed, reconveyed the land to the cestuis que trustent, John James Voorhies and George Ann, his wife, which deed refers to the trust deed as follows:

"Whereas, circumstances have since arisen which, in the judgment of all the parties to said present render it proper and desirable that said trust should cease, and said real estate and premises in said above referred to deed mentioned should be returned to the said John James Voorhies and George Ann Voorhies, free and discharged of and from said trust," etc.

Thereafter John James Voorhies and his wife executed two mortgages on this property, which were duly foreclosed, and the property conveyed by the sheriff to John I. Voorhies by deed dated August 5, 1879. Later, by deed dated July 26, 1888, John H. Kowenhoven, as trustee, for a stated consideration of $3,000, likewise conveyed said property to the said John I. Voorhies.

It has been insisted that the trust created by John James Voorhies has never been and could never be revoked, that the power of sale had never been properly executed, and that the trust might still be

in existence for the heirs of the said John James Voorhies. I do not agree with this contention, and for the following reasons determine that John I. Voorhies took clear title to the property:

The trust is for the collection of the income from the real property and the payment thereof to John James Voorhies and his wife, with power in the trustee to sell the estate at any time at public or private sale, and for such price or prices as the trustee may deem proper, with power to apply from time to time such portion of the proceeds as he may deem proper for the use and benefit of the grantors. It will be noticed that the proceeds of the sale of the property may be paid to the cestui que trust, not merely the income of the proceeds. The heirs of John James Voorhies are to receive only that portion of the estate remaining in the hands of the trustees on the death of John James Voorhies and his wife. It is at this point that this case differs from Harris v. Strodl, 132 N. Y. 396, 30 N. E. 962, for there the contingent interest of unborn children became absolute upon the happening of the contingency, which had nothing to do with the existence of the estate; but here there are two contingencies, one the death of John James Voorhies leaving heirs, the second the existence of the estate—that is, the failure of the trustee to pay out all the money or proceeds to John James Voorhies or his wife. The latter contingency can never happen, because the trustee has already legally disposed of the entire estate, as I shall now show.

1. As the deed gave to the trustee a power in trust to sell and turn over the proceeds as he chose, to the extent of all the proceeds, equity will deem it a valid exercise of his powers to turn over the real property instead. As the trustee, in the exercise of his discretion, was not bound to turn over all of the proceeds immediately upon the sale, but could extend payment over a period of time, the cestuis que trustent could not exercise the power of election and determine to take the realty instead of the money. To give the right of election, the parties beneficially interested must be competent, of full age, and the gift must be immediate, and not in trust. Mellen v. Mellen, 139 N. Y. 220, 34 N. E. 925. However, under the terms of this trust deed it is clearly apparent that the trustee could determine that he would not receive the rents and income, but would sell the property. Likewise he could determine, under the terms of the trust, to pay over the proceeds of the sale to John James Voorhies and his wife. When he had done this, the trust and power in trust would cease.

The same reasoning applied in all the cases giving the beneficiary the right of election to take the property instead of the money applies equally to these assumed facts, if the trustee were willing to convey the property directly, instead of selling and turning over the proceeds. While the beneficiaries could not elect or compel the trustee to convey the property, and thus terminate the trust, yet when the trustee had himself determined, in the exercise of his discretion, that he would thus terminate the trust by selling and turning over the proceeds, there is no reason why he could not instead convey the property directly. This he did by his deed of January 25, 1875, giving good title to John James Voorhies and his wife. While in Douglas v. Cruger, 80 N.

Y. 15, an attempt was made to end a similar trust by a deed from the trustee to the beneficiary, which was held to be invalid, yet the trust in that case contained no power of sale to convey; if it had, the decision would probably have been to the contrary.

2. If the deed to the beneficiaries from the trustee were void, yet his subsequent conveyance to John I. Voorhies of July 26, 1888, was a valid exercise of his powers as trustee. It is conceded that, if the trust had not been ended by the prior deed to the beneficiary, the trustee, under the terms of the trust, could sell at private sale, and convey a good title, and the purchaser, acting in good faith, would not be responsible for the proper application of the money. Section 108, Real Property Law; 1 Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 66. If John I. Voorhies actually paid $3,000 to the trustee, the consideration expressed in the deed, there could be no question as to the validity of his title. There is no evidence that he did not pay the $3,000, and the recital in the deed would be presumptive evidence against the trustee; but if we assume that the $3,000 was not paid, and that the deed in 1888 from the trustee was to cure a defect in the title supposed to exist by reason of the conveyance in 1875 from the trustee to John James Voorhies and from John James Voorhies to John I. Voorhies, yet there was proper and sufficient consideration for it, and the trustee, if the power in trust was then alive, legally exercised the power.

After Kowenhoven, the trustee, conveyed the premises to John James Voorhies in 1875, the latter obtained money on two mortgages. These mortgages were foreclosed, John I. Voorhies being the purchaser at the foreclosure sale. The mortgagee's money went to John James Voorhies. John I. Voorhies' money went to the mortgagees, so that eventually it was John I. Voorhies who, on the security of this property, paid money to John James Voorhies. Thereafter, under power of sale, the trustee conveyed the same property to John I. Voorhies. Under the trust deed John James Voorhies, in the discretion of the trustee, could receive all the proceeds of a sale by the trustee. It was not necessary that the consideration on the sale should pass directly through the hands of the trustee, or the money be actually paid to him at the time of the sale. If, therefore, John I. Voorhies had loaned or paid a sum of money to John James Voorhies, the trustee could thereafter, if in his discretion it was fair, right, and reasonable, have conveyed the property under the power of sale for this past consideration paid directly to the cestui que trust. This is virtually what the foreclosure sale and subsequent conveyance by the trustee amounted to, and is legal, even though the $3,000 consideration were not paid. I do not say that it was not paid; but, even assuming that it were not, this would still be the conclusion upon the facts presented.

It is stated in the trust deed that the trustee could sell for such price or prices as he might deem proper. A case similar to this has been recently decided the same way. Mt. Morris Co-operative Building & Loan Association v. Smith et al., 120 N. Y. Supp. 676.

John I. Voorhies, therefore, had a good title, either by reason of the trustee's deed in 1875 to the cestuis que trustent, or else by the trustee's deed to him in 1888, and I so find.

The application to register this title is granted.