[S. F. No. 11707. In Bank.—July 18, 1928.]

GEORGE F. WITTER, Jr., et al., Appellants, v. BANK OF MILPITAS (a Corporation) et al., Respondents.

George F. Witter for Appellants.

C. L. Witten, William H. Johnson and Bohnett, Hill & Campbell for Respondents.

THE COURT.—This action to quiet title and to set aside a trustees' sale and deed covering certain real property was instituted in March, 1924, approximately five years subsequent to such sale. The trial court found all material issues in favor of the defendants and judgment was accordingly entered. Upon appeal the judgment was affirmed by the district court of appeal, first appellate district, division two. The appellants' petition for hearing herein was granted in order that this court might more fully consider the contention that appellants were, under the circumstances disclosed by the record, entitled to the relief sought because of the failure of the respondent bank to give them personal notice of the contemplated sale of the property under the power contained in the trust deed. Incidentally, there is no provision or requirement in the trust instrument for the giving of such personal notice. It appears that the respondent bank did not immediately, upon breach, exercise its right to direct a sale of the premises involved but, on the contrary, gave the appellants every opportunity over an

extended period of time to meet their obligation. Having heretofore accepted whatever benefit may have accrued to them as a result of the respondent bank's delay in asserting its right to direct a sale, the appellants now state that such conduct served to lull them into inactivity and caused them to rest secure in the belief that no sale would be made until they had been personally notified thereof. We have examined the record and conclude that this contention cannot be sustained. The trial court found, and the finding is amply supported by the evidence, that the respondent bank did not by its conduct lull the appellants into inactivity or a sense of security. The only notice specified in the trust instrument called for publication of notice of sale "at least once a week for three weeks" in a newspaper having a general circulation in the county wherein the property is situate. That the sale was in strict accordance with the terms of said instrument was found by the trial court. The authorities indicate that it is sufficient if such notice be given as is required by the trust deed. (*Kennedy* v. *Dunn,* 58 Cal. 339, 340; *Balfour-Guthrie Co.* v. *Woodworth,* 124 Cal. 169, 171, 173 [56 Pac. 891]; *Sargent* v *Shumaker,* 193 Cal. 122, 130 [223 Pac. 464]; *Baldwin* v. *Brown,* 193 Cal. 345, 351, 352 [224 Pac. 462]; 25 Cal. Jur. 81, sec. 65.) We are of the opinion that this rule is applicable to the present case. As intimated, our examination of the record has disclosed nothing that would justify the application to this case of the equitable principle relied upon by the appellants requiring personal notice of sale when the trustor has been lulled into security by the conduct of the beneficiary. The appellants over a period of three years permitted the payments upon the principal and interest of their debt to fall in arrears without any apparent exertion to liquidate said obligation. The respondent bank, in order not to cause them any undue inconvenience, permitted the appellants to make tardy and inadequate payments, always cautioning them, however, that the time of the loan would not be extended and repeatedly informing them that the whole amount of the debt and interest had been declared due and payable and would be "called in." As pointed out above, this action was commenced approximately five years after sale under the power and subsequent to an agreement upon the part of the respondent bank to

sell the property to third parties, the respondents Ramstad. There would, therefore, appear to be little, if any, equity in the appellants' favor.

With this prefatory statement we adopt as the decision of this court the opinion of the district court of appeal, above referred to, written by Mr. Justice Sturtevant and concurred in by Mr. Justice Nourse and Mr. Presiding Justice Koford. It reads:

"The plaintiffs commenced an action against the defendant Bank and its grantee to set aside a sale made by the trustees under a deed of trust. The defendants appeared and answered and a trial was had in the trial court before the court sitting without a jury. The court made findings in favor of the defendants, and a judgment was entered thereon. The plaintiffs made a motion for a new trial, the motion was denied and the plaintiffs have appealed, bringing up a bill of exceptions. The portions of the record necessary to the consideration of any given point will be stated in connection with the discussion of the point.

"1. The plaintiffs complain because they were not given actual notice of the intended sale. The trust deed did not contain a provision requiring actual notice. On the contrary, the sixth paragraph provided that if the debtor failed to pay his interest at the time provided that in that event the beneficiary might consider the debt as immediately due and payable and that the trustees on the written application of the beneficiary might proceed to sell the property. The plaintiffs contend that the defendant Bank waived the provision just referred to by its conduct. They call to our attention that from the time the loan was negotiated that they were frequently in arrears in the payment of interest, etc., and notwithstanding that fact their payments were accepted when tendered and they cite and rely on the rule stated in *Boone* v. *Templeman,* 158 Cal. 290, 295 [139 Am. St. Rep. 126, 110 Pac. 947]. The defendants do not question the doctrine of that case, but contend that the facts of the case at bar do not bring it within the rule. They call to our attention the conversations and correspondence set forth in the bill of exceptions. Turning to the bill of exceptions it will be noted at once that the plaintiffs received their loan from the Bank on the 19th day of January, 1915. It will also be noted that by reason of the

nonpayment of interest the Bank wrote to the plaintiffs on June 9, 1916, exercising its option to declare the principal due and payable. That act was never canceled. Thereafter numerous letters were sent to the plaintiffs by the defendant Bank asking for its money. Excepting only the last payment, from the day the notes were signed until the very last payment, the payments made were made when the plaintiffs were in default and no single payment paid all interest then due. The last payment paid the interest five days in advance. During the same time the plaintiffs were promising to pay, asking for extensions, and representing that they were negotiating a sale of the property so that they could take up the loan. On July 29, 1918, the Bank wrote the plaintiffs that they could have an extension of time providing they paid up the interest due July 19, 1918, back taxes and kept the interest paid up promptly and kept someone on the place to take proper care of it. The letter closed with the statement: 'You have ten days from date in which to make the payment as above provided.' The interest mentioned was not paid until December 14, 1918. The discussions continued as above stated and in October, 1918, Mr. Witter had a conversation with Mr. Reed, the vice-president of the Bank, regarding the possible foreclosure. Referring to that conversation, the plaintiff testified that Mr. Reed said no foreclosure would be undertaken without notice to the plaintiffs. Mr. Reed testified that he never made the statement. In December, 1918, the Bank again threatened foreclosure in a letter addressed to Mr. Gehring, attorney for Mrs. Blais, who held a second trust deed. Mr. Gehring informed the plaintiffs. They handed to him a check for the interest. He delivered the check to the Bank and at the time of the trial he testified that on accepting the check 'they said the loan was satisfactory.' There was no evidence that Mr. Gehring was acting for the plaintiffs nor that he repeated to them 'that they (the Bank officials) said the loan was satisfactory.' The court found against the plaintiffs on the issue of lulling them into inactivity. The finding is sustained. (*Sargent* v. *Shumaker*, 193 Cal. 122, 134 [223 Pac. 464].) The payment last mentioned paid the interest to December 19, 1918. No further payments were made and on February

4, 1919, the board of directors of the defendant Bank ordered its agents to cause a sale of the premises.

"2. The plaintiffs contend that an unfair advantage was taken of them. They assert that they learned the foreclosure had taken place on March 24, 1919, and that on March 28, 1919, Mr. Gehring and Mr. Blais called at the Bank and offered to pay plaintiffs' indebtedness and the Bank refused the offer. They call to our attention that on March 27, 1919, the defendant Bank adopted a resolution to sell the property to A. G. Ramstad for $8,500, whereas the Bank had foreclosed on it for $6,425.05. The plaintiffs cite and rely on *Winbigler* v. *Sherman,* 175 Cal. 270 [165 Pac. 943]. In that case, at page 275, the court quotes with approval as follows: 'Where the inadequacy is palpable and great very slight additional evidence of unfairness or irregularity is sufficient to authorize the granting of the relief sought.' In their brief the plaintiffs cite many probative facts. Before we proceed to consider those probative matters it is necessary to consider the state of the record. Those probative facts were introduced in response to the allegations of the complaint of the plaintiffs, wherein the plaintiffs had alleged separately (1) numerous irregularities on the part of the trustees and (2) numerous fraudulent acts on the part of the trustees and the defendant Bank. The trial court made findings in response to each of said allegations. Each and all of those findings are against the plaintiffs. The plaintiffs contend that such findings are not supported by the evidence. As to some of the findings, there was no evidence contradicting them and as to some of the other findings the evidence was conflicting. This court may not disturb them.

"In connection with this point we understand the plaintiffs to contend that Mr. Giacomazzi could not act as trustee because he was an officer of the defendant Bank. They cite and rely on *Wickersham* v. *Crittenden,* 93 Cal. 17 [28 Pac. 788]. The case cited is not helpful. It was on an altogether different set of facts. The rule applicable is stated in *Copsey* v. *Sacramento Bank,* 133 Cal. 659 [85 Am. St. Rep. 238, 66 Pac. 7, 204], and *Herbert Kraft Co.* v. *Bryan,* 140 Cal. 73, 79 [73 Pac. 745].

"The plaintiffs say that the claim of the Bank, 'including costs and expenses of sale, was $6,425.05'; that

the property was sold for $6,525.05; and they assert that the trustees have wrongfully failed to pay them the balance claimed to be $100. Between the date of the execution of the notes and the date of the sale the property was vacant at times and in need of care. The trust deed authorized the Bank or the trustees, '4. . . . to enter, hold, protect, repair, and care for said property, including improvements, trees, vines and crops thereon, as they or either of them see fit . . . all at the trust and charge of said trustors. . . . ' It also authorized the trustees, after sale made, out of the proceeds to pay '6. . . . first the expenses of sale and these trusts including reasonable compensation for their services, counsel fees of $200.00 and cost of certificate or abstract of title to time of sale, all to accrue on any default of said trustors hereunder, next all amounts with interest due from said trustors pursuant to paragraph fourth of this instrument. . . . ' The attorney for the bank, Mr. Witten, made the bid. He testified: 'The amount of the bid made by me was $6525.25 and was made up of principal and interest $6300.05, advertisement $25.00, attorneys fees $200.00. One hundred of my fee went to pay a party who had done work on the orchard.' There was no cross-examination and no contradictory evidence. It is clear that the trustees do not wrongfully withhold $100.00 or any other sum.

"3. The third point made by the plaintiffs is that there was no devolution of title. The point involves a consideration of the following fact. The deed of trust as originally executed conveyed the property to M. Lynn and A. L. Crabb as trustees. It also provided that in the event of a default the trustees could sell the property. Furthermore, it provided (omitting irrelevant parts), 'said beneficiary may, at any time by instrument in writing appoint a successor, . . . or discharge and appoint a new trustee in the place of any trustee named herein or acting hereunder, . . . who shall have all the estate, powers, and duties of said trustee predecessor.' By an instrument in writing dated March 6, 1917, the Bank appointed E. P. Giacomazzi in the place and stead of M. Lynn. Thereafter Giacomazzi and Crabb conducted the trustee sale and conveyed the property. Lynn did not join nor did he execute a deed. Under the facts it was not necessary. (*Wood* v. *Gridley,*

217 Ill. App. 579.) At page 585 the court said: 'Upon the appointment being made under the power, the new trustee becomes vested, *ipso facto*, with the title to the trust premises and is clothed with the same power as if he had been originally named in the will. No conveyance need be made to him by the former trustee, or by the former trustee's heirs or representatives, if he be dead. (*Craft* v. *Indiana, D. & W. Ry. Co.,* 166 Ill. 580 [46 N. E. 1132]; *Reichert* v. *Missouri & I. Coal Co.,* 231 Ill. 238 [121 Am. St. Rep. 307, 83 N. E. 166]; *Edwards* v. *Edwards,* 22 Ill. 121; 39 Cyc. 312, and cases cited.)'

"The plaintiffs invoke sections 1091–1135 of the Civil Code and section 1871 of the Code of Civil Procedure. Those sections have no application to the facts.

■ "4. The trust deed provided that in making a sale the trustees should 'publish the time and place of such sale . . . at public auction at the front door of the county courthouse in the county of Santa Clara . . . ' The notice as published omitted the word 'house' and was worded 'front door of the county court in San Jose.' There is no claim that the sale as made was not made at the front door of the county courthouse at San Jose in the county of Santa Clara. The notice as published contained an exact reference to the date, parties, and the book and page of the recordation of the trust deed. That deed contained the correct information. That reference cured the slight defect of which the plaintiffs complain. (*Lau* v. *Scribner,* 197 Mich. 414 [163 N. W. 914], and cases there cited; see, also, *Hinds* v. *Clark,* 173 Cal. 49, 54, 55 [153 Pac. 153].)

■ "5. In this same connection it is contended that the notice was not published in a newspaper of general circulation. The notice was published in the Daily Record. A decree of the superior court adjudging the Daily Record to be 'a newspaper of general circulation' was introduced in evidence. The trial court made findings on the issue against the plaintiffs. As we understand, the plaintiffs contend that the adjudication was made two years prior to the date of the sale and that the adjudication is no evidence that the Daily Record was at the time of the sale a newspaper of general circulation. There was no evidence that the judgment determining the status of the Daily Record had been vacated. There is nothing in the record, therefore, from

which it can be argued that the findings made by the trial court on this branch of the case are not sustained by the evidence. (*In re Simpson,* 62 Cal. App. 549 [217 Pac. 789].)

■ "6. In making their sixth point the plaintiffs state that the trustees did not do their duty and continue the sale for want of bidders. They point out that there was only one bidder, the officer of the Bank; they call attention to the fact that it is their claim that the property was sold for a little over $6,000 when it was of a value of nearly $25,000; and they argue that to uphold the sale would be to uphold a set of facts that was tantamount to a fraud. The argument would be impressive if it were sustained by the record. But the record discloses that at the time of the sale there was only one bid. There was no request made by anyone that the sale should be adjourned to a day certain. The court found that the property was not of a value of $25,000, and that it could not have been sold for more than $8,500. That finding is supported by the evidence. In the absence of any other facts supporting the claim that the sale should have been adjourned the plaintiffs may not complain. (Freeman on Void Judical Sales, sec. 32.)

■ "7. It is next contended that there was no sale. That fact was alleged in the plaintiffs' complaint and the trial court made findings against the plaintiffs. In presenting the point to this court we understand the plaintiffs to contend that when Mr. Witten, the attorney for the Bank, appeared at the sale and made a bid, that his act was a nullity because he held no written instructions at the time, no writing was issued at the time, and no money was passed at the time. It was not necessary that he hold written instructions, nor that a contract be executed on the doorsill of the courthouse at the time of the sale, nor that money should pass at that same time and place, nor that the notes be surrendered. The writings subsequently made were sufficient. (*Bank of Orland* v. *Finnell,* 133 Cal. 475, 478 [65 Pac. 976].)

■ "8. The eighth point made by the plaintiffs is that the sale was not made at public auction and was therefore void. In other words, they contend that because the auction was not conducted by a licensed auctioneer then it was not a public auction. The power to license is vested in the

city of San Jose by virtue of the terms of its charter, article I, division 2. (See Stats. 1915, p. 1874.) No ordinance was introduced which shows that auctioneers are licensed at that place or which purports to regulate auctions or define what is a public auction. The words 'public auction' are not defined by statute and therefore they must be taken in their ordinary sense. (*Estate of Gird,* 157 Cal. 534, 542 [137 Am. St. Rep. 131, 108 Pac. 499].) Construed in that sense, the trustees fully complied with the terms of the deed.

"9. The plaintiffs contend that the sale was made by one only of two trustees and therefore void. They note the fact that the sale was actually conducted by Giacomazzi. The rest of their argument is the same as made under division 3, *supra.* For the reasons there stated, it is clear that the argument is without merit. Moreover, the deed of trust authorized the two trustees to make the sale. It neither directed nor required that the two should attend the sale, nor that both as in a duet conduct the auction.

"10. It is next contended that the sale was made without consideration. In this connection the plaintiffs make two complaints—they object because the trustees did not take up the notes and return the notes to the makers and they object because the trustees did not require the Bank to pay cash. As to the first complaint it does not come within the terms of the trust deed. It is wholly silent on the subject. If the makers wanted the notes surrendered to them, it was their duty to apply to the Bank therefor. As to the second complaint, it is quite clear that the deed provided that the sale would be for cash, however, if the beneficiaries bid at the sale, the deed contained no language that commanded the trustees to require that the Bank carry to the sale a sack of cash, make its bid, obtain its deed, pay in cash, and then demand back the cash and credit it as a payment on the notes. Having determined their duty to make a sale, the trustees had the right to conduct it as they did. The idle act of carrying around the sack of cash is not mentioned in the contract and 'the law neither does nor requires idle acts.' (Civ. Code, sec. 3532.) In *Voorhies* v. *Voorhies,* 66 Misc. Rep. 78, 82 [120 N. Y. Supp. 677, at page 681], the court said: '1. As the deed gave to the trustee a power in trust to sell and turn over the proceeds as

he chose, to the extent of all the proceeds, equity will deem it a valid exercise of his powers to turn over the real property instead. . . . The same reasoning applied in all the cases giving the beneficiary the right of election to take the property instead of the money applies equally to these assumed facts, if the trustee were willing to convey the property directly, instead of selling and turning over the proceeds. While the beneficiaries could not elect or compel the trustee to convey the property, and thus terminate the trust, yet when the trustee had himself determined, in the exercise of his discretion, that he would thus terminate the trust by selling and turning over the proceeds, there is no reason why he could not instead convey the property directly. This he did by his deed of January 25, 1875, giving good title to John James Voorhies and his wife.'

"11. The plaintiffs contend that plaintiffs have been deprived of their property without due process of law. That point is but another method of arguing the contentions presented in the preceding divisions. For the reasons stated above the point must be ruled against the plaintiffs.

"We have taken up and discussed each point made in the opening brief. In their closing brief the plaintiffs, for the first time, set forth certain errors of law. There are two reasons why we do not take up each one and discuss it. If the plaintiffs relied on said errors or any one of them, the plaintiffs, in fairness to the defendants and to the court, should have presented such points in their opening brief. (2 Cal. Jur., p. 734, sec. 424.) In the second place, it is clear if we make a detailed comparison, that the points stated in the opening brief were but another method of stating the errors of law which plaintiffs enumerate in their closing brief.

"We find no error in the record."

The judgment appealed from is affirmed.

Rehearing denied.

All the Justices concurred.