[Civ. No. 2526. Fourth Appellate District.—February 5, 1941.]

KNUD M. TRUELSEN, Plaintiff; F. F. PORTER et al., as Executors, etc. (Substituted Plaintiffs), Respondents, v. HERMAN K. NELSON et al., Appellants.

Farnsworth, Burke & Maddox and James K. Abercrombie for Appellants.

McFadzean & Crowe for Respondents.

BARNARD, P. J.—This was an action to quiet title to three parcels of land. The plaintiff, Knud M. Truelsen, died while this appeal was pending and his executors have been substituted. For convenience, we will refer to Knud M. Truelsen as the plaintiff and respondent.

The plaintiff purchased these parcels at a sale under execution which was levied to satisfy a judgment for $35,601.57 which he held against the defendant Herman K. Nelson. The defense to this action was that these parcels of land were the separate property of Mrs. Nelson, the other defendant, having been purchased with funds partly owned by her before her marriage and partly derived from her earnings as a school-

teacher after her marriage. The defendants have appealed from the judgment, on the ground that the evidence is insufficient to support certain findings to the effect that the properties in question were the community property of Mr. and Mrs. Nelson and not the separate property of the latter.

Mr. and Mrs. Nelson were married in 1924. From then until 1928, Mr. Nelson received a salary as manager of a 260-acre ranch. In 1928, he acquired a half interest in a contract to purchase that ranch, the purchase price being $56,000. In the same year he became indebted to this respondent in the sum of $21,750, giving a note therefor. About a year later he gave the respondent a new note, secured by his interest in the contract for the purchase of the 260 acres. Later that year he seems to have lost his interest in that ranch although he continued to manage it until 1931, drawing the same salary he had drawn prior to 1928.

The first parcel of the property here in question was purchased on contract on July 29, 1931, $1266.92 being paid on account of the purchase price. In 1934, this property was deeded to Mrs. Nelson, at which time a trust deed signed by both Mr. and Mrs. Nelson was placed on the property to secure a loan of $4,000. Payments on that loan were made each year thereafter until 1938, at which time $3,500 had been paid on the principal sum. The second parcel was purchased on November 25, 1931, for $800, of which $200 was paid in cash. The property was deeded to Mrs. Nelson and a trust deed given for the balance of the purchase price, which was signed by both Mr. and Mrs. Nelson. This trust deed was paid off in two installments in 1934. The third parcel was deeded to Mrs. Nelson in 1935, the purchase price of $1106 being paid in full. Mr. Nelson farmed the three parcels in question each year after they were deeded to his wife and, in 1932, 1934 and 1935, respectively, he executed crop mortgages covering the crops thereon, in which he represented that he was the owner of the land. In 1936, such a crop mortgage was given, which was signed by both Mr. and Mrs. Nelson. A well was drilled and a pumping plant was installed for the purpose of furnishing water to a part of this land, one of these contracts being executed by both Mr. and Mrs. Nelson and the other by Mr. Nelson alone.

There is evidence that Mrs. Nelson had $5,000 at the time of her marriage, that between that time and 1929 she earned $6,450 by teaching school, and that from 1930 to 1938 she

earned an additional $4,892.84 in that manner. All of this money was placed in bank accounts in the name of Mrs. Nelson, but there is no evidence as to when any particular amount was placed therein or when any amounts were withdrawn therefrom. She testified that she had kept no accounts and had made no segregations except that she had, about a week before the trial, made a list of her earnings as a schoolteacher through these years. Mr. Nelson discontinued his bank account about the time his debt to the respondent was created in 1928 and from then until the date of the trial all moneys earned by Mr. Nelson, and all moneys received from his farming operations on the lands here in question and on other lands were deposited in Mrs. Nelson's bank account. He testified that he had farmed other lands during this time and that he had done contracting work for other farmers. Checks were drawn on the wife's bank account to pay the expenses of the farming operations on the lands here in question and on other lands and to pay for equipment used in his contracting work. Checks were also drawn on the same account for the living expenses of both Mr. and Mrs. Nelson and for any other expenses of both. All payments made on the three parcels of land here in question were also made by checks drawn on this account.

While Mrs. Nelson testified that at the time of their marriage she and her husband agreed that the money she then had and the money she should earn by teaching were to be retained by her as her separate property, Mr. Nelson twice testified that there was no such agreement. Many thousands of dollars which came from Mr. Nelson's farming and contracting operations were thus placed in Mrs. Nelson's bank account. Mrs. Nelson testified that she kept no books, had no record of deposits or withdrawals from this account and that she could not tell within $5,000 of how much money she had had in the bank in 1931, or within $5,000 of the amount in her bank accounts since 1932. Each of the appellants gave conflicting testimony on material matters and each contradicted the other in several important respects. The evidence indicates and justifies the inference that after 1928 all money received by these parties from all sources were mingled in a common bank account standing in the name of the wife, that no records were kept and that no attempt at segregation was made at any time. It further appears that a few days before the trial Mrs. Nelson put down from memory the amounts she

had received as a teacher during the various years, and one of the contentions seems to be that a sum equal to the amount of these earnings, together with her original $5,000, should be considered as her separate property and be exempt from her husband's debt.

■ This property having been deeded to Mrs. Nelson there was a presumption that it was her separate property ('Civ. Code, sec. 164). This presumption, however, is a rebuttable one. (*Estate of Cronvall*, 220 Cal. 503 [31 Pac. (2d) 372].) In that case, while the court said that the evidence was meager it was held sufficient to overcome the presumption and to establish the community character of the property. ■ Section 168 of the Civil Code provides that the earnings of a wife are not liable for the debts of her husband, except for necessities. This exemption may be waived and is waived where such earnings are so mingled with community property as to lose their identity. (*Pfunder* v. *Goodwin*, 83 Cal. App. 551 [257 ■ 119].) [3] It is well settled in this state that where separate and community property are so commingled that they cannot be traced and the identity of each has been lost, the whole will be treated as community property since the burden is upon the party claiming that the property is separate to establish that fact. (*Fountain* v. *Maxim*, 210 Cal. 48 [290 Pac. 576]; *Estate of Fellows*, 106 Cal. App. 681 [289 ■ 887].) [4] And where separate and community property is thus mingled a wife may not thereafter claim an exemption as to a sum which equals the amount of her earnings which she has theretofore placed in the common fund. (*Street* v. *Bertolone*, 193 Cal. 751 [226 Pac. 913].)

■ In the light of these established rules it cannot be here held that the evidence is not sufficient to support the findings of which the appellants complain. While there are conflicts in the evidence these have been resolved by the trial court in favor of the respondent.

■ In their final brief the appellants raise the point that this action was begun some nine months after the delivery of the sheriff's certificate of sale, and some three months before the expiration of the year of redemption and the issuance of the sheriff's deed, and that the sheriff's deed had not been recorded at the time of the trial. It is argued that this action was premature, that the respondent had no title at the time the action was brought, and that he has failed to prove that he ever had title.

Section 738 of the Code of Civil Procedure provides that such an action may be brought by any person against another who claims an interest in real property, adverse to him. At the time of the sale the respondent acquired any interest in this property possessed by the judgment debtor (sec. 700, Code Civ. Proc.) and the other appellant claimed title adversely to him. The fact that any interest acquired by the respondent was then subject to a right of redemption did not deprive him of a present interest. In *Pollard* v. *Harlow*, 138 Cal. 390 [71 Pac. 454, 648], it was pointed out that while the property is still subject to redemption ''the case is simply the familiar one of a legal title, defeasible upon the happening of a condition subsequent'', and also that while a deed is subsequently to be given that deed gives to the purchaser no new title to the land but is merely evidence that his title has become absolute. It would seem to follow that the respondent had sufficient claim of title to enable him to bring and maintain this action, although it might have been defeated by a timely redemption.

 A further consideration is that this point was raised for the first time in appellants' reply brief, and we are not required to act upon it. (*Tagus Ranch Co.* v. *First Nat. Bk.*, 7 Cal. App. (2d) 457 [46 Pac. (2d) 809]; *Lady* v. *Palen*, 12 Cal. App. (2d) 3 [54 Pac. (2d) 1134]; *Lotts* v. *Board of Park Commrs.*, 13 Cal. App. (2d) 625 [57 Pac. (2d) 215]; *Witter* v. *Bank of Milpitas*, 204 Cal. 570 [269 Pac. 614].) We would be the more disinclined to act upon it since the situation could have been met by appropriate proceedings in the trial court, had the point there been raised, and since the evidence so clearly discloses a commingling of the various funds owned by the appellants that it may not reasonably be expected that a reversal and new trial would change the result.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.