## In Equity.

SUMNER S. RICHARDS, et al., Trustees,

*vs.*

GEORGE E. MORRISON, et als.

York.   Opinion July 11, 1906.

*Will.   Construction.   Life Estate.   Power of Sale.   Gift Over.*

A testator by the sixth article of his will provided as follows : "To my wife, Henrietta E. Woodman, I give and devise my house, stable and lot of land now occupied by me, situated on Main street in said Saco, (describing the same by metes and bounds) to her to hold during her lifetime. I also give and bequeath to my said wife all my household furniture in said house, including piano, pictures, library and all other household effects not above enumerated, together with my horses, carriages and all other personal property in my said stable. I further give and bequeath and devise to my said wife during her lifetime the free use of water for the aforesaid buildings and lot of land from the Saco Aqueduct Company ; I further give and bequeath to my said wife twenty-five shares of the stock of the Laconia Manufacturing Company, of Biddeford, Maine. It is my will that my wife have the entire use and income, during her lifetime, of all the above mentioned property real and personal ; and, in addition thereto, I do empower her to sell and convey by her own grant or deed any of said property, real and personal, as she may in the exercise of her own discretion choose to sell or convey, for her sole use and benefit, and without any license from Probate Court."

The testator further provided as follows : " I do hereby give, bequeath and devise whatever of the estate, real and personal, hereinbefore given and devised to my wife, shall remain unused, unexpended and not sold or conveyed by her as aforesaid at her decease, to my son and daughter and their lawful heirs, to hold to them subject to the provisions, limitations and restrictions hereinbefore expressed."

The wife received the twenty-five shares of stock of the Laconia Company and had them transferred to herself. Later there was a consolidation between the Pepperell Manufacturing Company and the Laconia Company, and the stock of the two companies was called in and cancelled and stock of the Pepperell Company issued therefor, of which the wife received forty-five shares, which she held at her decease.

The question was whether under the will, the wife took absolute title to the Laconia stock, or only a life estate, and whether the forty-five shares of Pepperell stock belonged to her estate or to the estate of the testator. *Held :* that the wife took only a life estate in the Laconia stock, and had only a life estate in the Pepperell stock, and that upon her death that stock which she then held became a part of the estate of the testator as a part of the trust estate created by his will.

The same testator by the ninth article of his will gave the residue of his estate to trustees for certain uses. The only one involved in this case is that which directed the trustees "pending the settlement of my estate and until final division" to pay to his wife ten twenty-sevenths portion of the income "during her lifetime or until final settlement of my estate" for her sole use and benefit, and, after disposing of the balance of income to other parties, he provided that "upon final settlement of my estate or distribution thereof my trustees shall convey and deliver to my wife ten twenty-sevenths parts of this my residuary estate, and she may herself select such portion from any parcels of my residuary estate at the appraised value thereof. It is my will that my wife have the entire use and income, during her lifetime, of all said portion of my residuary estate ; and, in addition thereto I do authorize and empower her to sell and convey by her own grant or deed any of said estate, real or personal, which she may in the exercise of her own discretion, elect to sell and convey for her sole use and benefit without license of Probate Court." Then followed a gift over to other parties of what "at her death shall remain unused, unexpended or unsold and unconveyed by her." In the distribution the wife received various stocks and bonds, and among them were 1,000 Trenton Passenger Railroad bonds, 2,000 City of Superior and 500 Brunswick and Chillicothe bonds which she held at her decease.

The question submitted was whether these bonds which the wife held at her death belong to the estate of the testator to be held by his trustees, or whether they were the absolute property of the wife and belong to her estate. *Held :* that these bonds belong to the estate of the testator and not to the estate of the wife.

In equity. On report. Decree according to opinion.

Bill in equity brought by the plaintiffs Sumner S. Richards and James O. Bradbury, trustees under the last will and testament of Horace Woodman, late of Saco, deceased, against George E. Morrison as administrator of the estate of Henrietta E. Woodman,—wife of said Horace Woodman,—late of Saco, deceased, and Joseph Alton Woodman, Louisa M. Tinkham, both of Saco, and Arthur. W. Andrews and Simon B. Adams, both of Biddeford, and James H. Miles guardian of Caroline P. Adams of Saco, and Caroline P. Adams of Saco, asking for the construction of the sixth and ninth

items or clauses of the last will and testament of the said Horace Woodman.

At the hearing in the court of the first instance, an agreed statement of facts was submitted, and it was then agreed that the cause should be reported to the Law Court and that upon bill, answers, and the agreed statement of facts, the Law Court "is to construe the will of Horace Woodman with especial reference to the 6th and 9th clauses, and is to advise the parties in regard to their rights thereunder."

All the material facts appear in the opinion.

*Foster & Foster and James O. Bradbury,* for plaintiffs.

*Cleaves, Waterhouse & Emery,* for all the defendants except Simon B. Adams.

*John M. Goodwin and John A. Snow,* for Simon B. Adams.

SITTING: WISWELL, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

STROUT, J. This is a bill in equity asking the construction of articles 6 and 9 in the will of Horace Woodman.

Article 6 is as follows: "To my wife, Henrietta E. Woodman, I give and devise my house, stable and lot of land now occupied by me, situated on Main street in said Saco, (boundaries given but omitted here) to her to hold during her lifetime.

"I also give and bequeath to my said wife all my household furniture in said house, including piano, pictures, library and all other household effects not above enumerated, together with my horses, carriages and all other personal property in my said stable. I further give and bequeath and devise to my said wife during her lifetime, the free use of water for the aforesaid buildings and lot of land, from the Saco Aqueduct Company; I further give and bequeath to my wife twenty-five shares of the stock of the Laconia Manufacturing Company of Biddeford, Maine. It is my will that my wife have the entire use and income, during her lifetime, of all the above mentioned property, real and personal; and, in addition thereto, I do empower her to sell and convey by her own grant or deed, any of said property, real and personal, as she may in the

exercise of her own discretion choose to sell or convey, for her sole use and benefit, and without any license from Probate Court.

"I do hereby give, bequeath and devise whatever of the estate, real and personal, hereinbefore given and devised to my wife, shall remain unused, unexpended and not sold or conveyed by her as aforesaid at her decease, to my son and daughter, and their lawful heirs, to hold to them subject to the provisions, limitations and restrictions hereinafter expressed."

Mrs. Woodman received the twenty-five shares of stock of the Laconia Company, and had them transferred to herself. Later there was a consolidation between the Pepperell Manufacturing Company and the Laconia Company, and the stock of the two companies was called in and cancelled, and stock of the Pepperell Company was issued therefor, of which Mrs. Woodman received forty-five shares which she held at her decease. This exchange of stock cannot be regarded as a sale by her. The Pepperell stock she received was in lieu of the Laconia stock, and was held by her in the same and no greater right than she had held the Laconia stock.

The question is whether under the will Mrs. Woodman took absolute title to the Laconia stock, or only a life estate. It will be noticed that in the first paragraph the testator gave his wife the house and stable "to hold during her life," thus expressly creating a life estate. In the next paragraph he gives her the household furniture, horses, and all personal property in the stable,—but omits any mention of life. All of this personal property was subject to deterioration by use, and provisions in the stable for the horses, as there probably was, would be consumed by use. As to such, the gift of the use, if expressed for life, necessarily confers absolute title. *Stuart* v. *Walker*, 72 Maine, 151. Then follows a gift to the wife "during her lifetime," of the free use of water for the buildings. Following this is the gift to the wife of the Laconia stock, in absolute terms, and with no mention of life. If the sixth article ended here, there could be no doubt that the gifts of the furniture, etc., and of the stock were absolute and conferred full title upon the wife; but in the same paragraph, the testator added, that it was his will that his wife should have the entire use and income "during her lifetime" of all

the before mentioned property. He then gave her a power of sale of any of the property "for her sole use and benefit," with a devise over of whatever of the estate, real or personal, should "remain unused, unexpended, and not sold or conveyed by her." All these provisions are contained in the same paragraph, and must be construed together. Thus reading the clause we think it appears that the testator intended only a life estate in all the devised property, with power of sale.

It is a sound rule of law that the intention of the testator is to be carried out, if not inconsistent with legal principles. No rule of law interferes to prevent the intention of the testator in this case taking effect.

The ninth article in Woodman's will gives the residue of his estate to trustees in trust for certain uses. The only one involved here is that which directs the trustees "pending the settlement of my (his) estate and until final division," to pay to his wife ten twenty-sevenths portion of the income "during her lifetime, or until final settlement of my (his) estate," for her sole use and benefit, and after disposing of the balance of income to other parties he provides that "Upon final settlement of my estate or distribution thereof, my trustees shall convey and deliver to my wife ten twenty-sevenths parts of this my residuary estate, and she may herself select such portion from any parcels of my residuary estate at the appraised value thereof. It is my will that my wife have the entire use and income, during her lifetime, of all said portion of my residuary estate; and in addition thereto, I do authorize and empower her to sell and convey by her own grant or deed any of said estate, real or personal, which she may in the exercise of her own discretion elect to sell and convey for her sole use and benefit, without license of Probate Court." Then follows a gift over to other parties of what "at her death shall remain unused, unexpended or unsold and unconveyed by her." It appears that in the distribution of the estate Mrs. Woodman selected and received various stocks and bonds, amounting in all to $15,051.85. Among them were 1,000 Trenton Passenger Railroad bonds, 2,000 City of Superior bonds, 500 Brunswick and Chillicothe bonds, which she retained and held at her decease.

The question submitted is, whether these bonds which she held at

her death now belong to the estate of the testator to be held by his trustees, or whether they were the absolute property of Mrs. Woodman and belong to her estate.

The testator in express terms provided that pending the settlement of his estate or until final division thereof, ten twenty-sevenths of the income of the trust estate should be paid to the wife "during her life-time," if the estate was not sooner settled, "to her sole use and benefit." Nothing more than a life estate was intended or created. Upon final settlement or distribution of his estate the trust as to the ten twenty-sevenths was to end, and the same fraction of the corpus of the trust estate was to be delivered to her, from which she would derive substantially the same income as she had previously received from the trustees, of whom she was one. The implication is very strong that he intended her to receive an equal income for life; as he says she is to have the " entire use and income during her lifetime of all said portion" of the residuary estate; and to provide against possible contingencies he adds a power of sale for a limited purpose, to wit, "for her sole use and benefit " of any part of the property. She is not authorized to bestow it by gift or dispose of it by will. The phrase "for her sole use and benefit" evidently means for her comfortable support, in sickness or health, of which she was to be the judge. Hence it does not fall within that class of cases where an implied life estate is enlarged to a full title by an absolute power of sale and disposal for any purpose or in any manner the donee may desire. Apparently she exercised this power, as all of the ten twenty-sevenths of the property was consumed except the three items of stock and bonds above referred to. It is very clear that under the ninth clause of the will Mrs. Woodman took a life estate only in the ten twenty-sevenths, with power of sale for the purpose stated, and that upon her decease what of it remained goes to the plaintiffs as trustees, to be held and disposed of by them according to the trust provisions in the will. See *Stuart* v. *Walker*, supra ; *Collins* v. *Wickwire*, 162 Mass. 144.

The first question submitted to us is, — Whether the said forty-five shares of the stock of the Pepperell Manufacturing Company issued in lieu of the twenty-five shares of stock of the Laconia Manufactur-

ing Company belongs to the estate of Horace Woodman, as a part of the trust estate, or whether they belong to the estate of Henrietta E. Woodman, to be administered by her administrator.

To this we answer that the stock belongs to the estate of Horace Woodman, to be administered as part of his estate.

The second question is — Whether the bonds and stock enumerated in Schedule B, annexed to the bill, belong to the estate of Horace Woodman, as part of the trust estate to be controlled and administered by the trustees.

To this we answer that the unused and unexpended portion thereof, to wit, 1000 Trenton Passenger Central bonds, 2000 City of Superior bonds, and 500 Brunswick and Chillicothe bonds belong to the estate of Horace Woodman, and are now a part of the trust estate to be administered by said trustees.

*Decree accordingly.*