JANE A. BEVANS, Appellee, vs. GEORGE W. MURRAY.—
(IRA B. MEYERS et al. Appellants.)

*Opinion filed October 25, 1911—Rehearing denied Dec. 6, 1911.*

1. WILLS—*proper construction of a will depends upon its own provisions.* While the general principles governing the interpretation of wills are the same in all cases, yet they must be applied in accordance with the particular provisions of the will which is being construed.

2. SAME—*when a life tenant has more than a naked power of sale.* Where a will gives the husband of the testatrix all of the estate she may own at her death, "to be by him used and disposed of during his natural life precisely the same as I might do were 1 living, hereby giving to my said husband full power to sell, exchange, mortgage, invest and re-invest the same in the same manner as I might do if living, and to use so much of the income and principal thereof as he may desire," and makes provision for any residue that may remain undisposed of by him, the husband takes a life estate with a liberal but not unlimited power of disposition, and he may dispose of the property to obtain means for his support and comfort, although he cannot give away the estate or change the residuary devisees.

3. Under the above provision the husband has power to make a deed conveying an undivided interest in the land, which was valuable but unproductive, in consideration that the grantee should manage the estate and assume and pay off the indebtedness against it and the expenses of its maintenance, and in the absence of any fraud or failure by the grantee to perform, such deed should be upheld as a valid exercise of power.

4. Under the aforesaid provision the husband has no power to make a voluntary conveyance of the remaining undivided interest in the property in trust for beneficiaries other than the residuary devisees named in the will, notwithstanding it is claimed he was attempting to comply with the wishes of the testatrix as expressed in an unsigned pencil memorandum made by her after the execution of the will, as such memorandum is without probative force and the will is the sole source of the husband's power.

5. EQUITY—*when equity has power to deal with proceeds of a sale.* A court of equity having obtained jurisdiction of all the parties in interest and of the real estate involved, has power to adjust the rights of the parties in the proceeds of such parts of the real estate as have been sold, in the same manner and to the same extent as though it were dealing with the real estate itself.

6. DEEDS—*when deed need not state that it is executed under a power.* If a quit-claim deed, joined in by a life tenant having a power of disposition under the will of an owner of an undivided interest in the land conveyed, is in fact executed by virtue of the power given by the will and was so intended and understood by the parties, it is not material that the power was not referred to in the deed; and such deed will convey not only the interest of the life tenant, but also the interest owned by the testatrix at her death.

7. TRUSTS—*unused proceeds of sales are not individual property of life tenant.* Where the husband, as life tenant and executor under his wife's will, has full power to dispose of the property for his own comfort and support or for re-investment, the entire property is in the nature of a trust fund for those purposes, and the fact that at the time of his death he has on hand unused or uninvested proceeds of sales made by him by virtue of his power under the will does not operate to transfer such funds to his estate.

8. SAME—*a court of equity will follow trust fund.* Where a trustee disposes of the trust fund equity will follow the fund as long as it can be identified, and will impress the trust upon it regardless of any change that may have been made therein.

9. JURISDICTION—*when court must be able to control real estate affected.* Where land is to be affected by a decree, as in partition proceedings, assignment of dower and the foreclosure of mortgages or other liens, the court must be able to control the real estate or it has no jurisdiction of the case.

10. SAME—*courts of equity act either upon the property or the person of the owner.* Courts of equity act either upon the property involved or upon the person of the one who has the possession, control or title thereto, and whether they may accomplish their purpose in the one way or the other depends upon the character of the proceeding and the relief sought.

11. SAME—*when real estate must be within jurisdiction of the court.* Where it is necessary to act directly upon real estate itself in order to do justice between the parties, it is indispensable that the real estate be within the jurisdiction of the court.

12. SAME—*when equity may compel conveyance by a decree in personam.* Where one is the owner of land which in equity and good conscience he ought to convey to another, the party entitled to a conveyance may file a bill in any jurisdiction in which such owner may be found, and the court may, by a decree *in personam,* compel the execution of the conveyance though the land itself is beyond its territorial jurisdiction.

13. SAME—*what does not deprive court of jurisdiction to compel conveyance of legal title.* Where a life tenant with power of disposition under the will has exceeded his powers in conveying the

estate, a court of equity, if it has jurisdiction of all the parties, may, by a decree *in personam*, compel the placing of the legal title in the parties in whom it belongs, notwithstanding the fact that some of the land lies in a foreign State, and that, as to such land, the construction and effect to be given the will may ultimately become a question for the courts of the foreign State.

14. POWERS—*a life tenant's power of disposition under will can not be delegated.* A life tenant's power given by will to dispose of the property for the purpose of his support and comfort or for reinvestment cannot be delegated, and if his deed to an undivided two-thirds interest in certain property is invalid as a voluntary conveyance beyond the scope of such power, his grantee cannot convey a valid title to such interest to persons not innocent purchasers for value, even though they may have rendered services to the life tenant which would have supported a direct conveyance from him to them.

15. PLEADING—*an objection that a bill is multifarious should be raised by demurrer.* An objection that a bill is multifarious should be raised by demurrer, and if the defendants answer the bill and a hearing is had upon the merits the objection cannot be first raised in the court of review.

DUNN, CARTWRIGHT and HAND, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

SMITH & WALLACE, and ELMER & COHEN, for appellants.

CLIFFORD N. WHITE, and ASHCRAFT & ASHCRAFT, (E. M. ASHCRAFT, of counsel,) for appellee.

Per CURIAM: Jane A. Bevans filed a bill in equity in the superior court of Cook county to set aside certain deeds made by Alfred H. Champlin, under a power given to him by the will of his wife, Mary M. Champlin, to Ira B. Meyers. The defendants below, who were all of the persons having or claiming any interest in the subject matter of the litigation, answered the bill, and upon a hearing before the master to whom the cause was referred, a finding was made in favor of the complainant below, which was approved by

the court and a decree rendered in substantial accordance with the prayer of the bill. Part of the defendants below have prosecuted an appeal to this court and seek a reversal for errors which will be hereinafter referred to.

Alfred H. Champlin was a physician and practiced his profession for many years on the south side of the city of Chicago. Mary M. Champlin, his wife, was for more than fifteen years prior to her death an invalid and required a great deal of personal attention. They had no children of their own but they had an adopted daughter, who married Ira B. Meyers. Mary M. Champlin owned in her own right, at the time of her death, several tracts or parcels of real estate, which, for convenience, may be divided into tracts, as follows: (1) A tract consisting of the homestead, located at the corner of Princeton avenue and Sixty-first street, in Chicago, which was improved by an eight-room frame house located on a lot 100x125 feet; (2) an undivided half interest in part of section 35 and part of section 2, along the Calumet river, which is mentioned in the record as "The Farm Property," the other half interest being owned by the appellee, Jane A. Bevans, the tract containing 168 acres; (3) about four hundred feet fronting on State street near One Hundred and Twenty-seventh street, in the city of Chicago, known as "The Wildwood Property" or "The Old Homestead;" (4) an undivided half of a fifty-three acre tract in Indiana, the other half being owned by Jane A. Bevans; (5) a third interest in an adjoining strip, spoken of as "The Neck," the other owners being George W. Murray and Jane A. Bevans; (6) an undivided interest with Murray and Mrs. Bevans and a number of others in a seven-acre tract in Indiana. All of this property was clear of liens at the time of the death of Mary M. Champlin, but she left unpaid debts amounting to $2600, which included taxes due on the real estate and a debt to a Mr. Whisler of $1600 for money borrowed with which to pay taxes. She left no personal property.

George W. Murray was a brother and Jane A. Bevans was a sister to Mrs. Mary M. Champlin and were her nearest blood relatives. Mary M. Champlin died May 2, 1902, leaving a last will, made in 1888, which is in the following words:

"I, Mary M. Champlin, of Englewood, Illinois, do make, publish and declare this my last will and testament and hereby revoke all former wills by me at any time made.

"*First*—I give, devise and bequeath to my beloved husband, Alfred H. Champlin, if he shall survive me, all my remaining estate, both real and personal, in whatever it may consist or whereever situated, at the time of my decease, to be by him used and disposed of during his natural life precisely the same as I might do were I living, hereby giving to my said husband full power to sell, exchange, mortgage, invest and re-invest the same in the same manner as I might do if living, and to use so much of the income and principal thereof as he may desire.

"*Second*—But if my said husband shall not survive me, or any of my said estate, either in its original form or otherwise, shall remain undisposed of by my said husband at the time of his decease, I give, devise and bequeath to my daughter, Cora Champlin, our homestead in Englewood, Illinois, as described in deed from Ira J. Nichols to me dated March 1, 1881, and recorded in the recorder's office of Cook county, Illinois, in book 993 of records, on page 447, and all my household goods, except the portrait of my said husband and myself, which I direct after the death of my said husband shall be given to the Cook County Normal School. All the residue and remainder of my estate to be equally divided among the following named persons, to-wit: Cora Champlin, my daughter, Jane A. Bevans, my sister, and George W. Murray, my brother, the issue of each of the three persons last named to receive the share of any of them who may not survive my said husband.

"*Third*—Should my said daughter, Cora Champlin, not survive my husband and die without issue surviving her, I direct that the above devises and bequests to her shall go to my said sister, Jane A. Bevans.

"*Fourth*—I hereby appoint my said husband as the executor of this my last will and request that he be allowed to execute the same without bonds, and in the event of my husband not surviving me, I appoint my said brother, George W. Murray, executor hereof, with a like request that he be not required to give bonds.

"Witness my hand and seal this ninth day of October, A. D. 1888.

MARY M. CHAMPLIN.     (Seal.)"

This will was admitted to probate in Cook county on June 10, 1902, and Dr. Champlin qualified as executor, settled the estate and made his final report and was discharged on September 9, 1904. Cora Meyers, the adopted daughter, died January 7, 1904, leaving no lineal descendants. On January 14, 1904, seven days after the death of Cora Meyers, Dr. Champlin, assuming to act under and by virtue of the power vested in him by the will of his wife, made a deed of conveyance, which was acknowledged on that date, and afterwards, on November 7, 1904, duly recorded in Cook county, for a recited consideration of $10,-000, purporting to convey to appellant Ira B. Meyers an undivided one-third interest in all of the lands owned by Mary M. Champlin at the time of her death, except the interest she had in a seven-acre tract in the State of Indiana, which is above described as tract 6. Appellee contends, and the master and court below found, that there was no present consideration paid by Meyers for this deed, while, on the other hand, appellants claim that there was a valuable consideration in the way of services to be rendered to Dr. Champlin in connection with the property, money advanced to him and debts assumed by Meyers. The contentions of the respective parties as to this question constitute one of the controverted questions of fact.

On April 23, 1904, Dr. Champlin made a second deed to Ira B. Meyers, purporting to convey to the said Meyers the remaining two-thirds interest in the property owned by Mrs. Champlin at the time of her death. This last deed included all of the property of which the testatrix died seized. There is some contention respecting the delivery of this deed, but we do not deem it necessary to recite the evidence bearing upon that question, since, under the view that we have of other questions involved, it is immaterial whether the deed was delivered or not. At the time this deed was executed Dr. Champlin executed a declaration of trust, which, omitting the date and signature, is as follows:

"*To Ira B. Meyers:*

"I have this day executed a deed conveying to you seven (7) parcels of real estate, four being in Cook county, Illinois, and three in Lake county, Indiana. The property at the corner of Princeton avenue and West Sixty-first street, being the premises first described in said deed, is yours in your own right, absolutely and forever. All the remaining portions I desire to have you hold in trust for the following uses and purposes:

"*First*—To take exclusive charge and control of the same, managing it in whatever manner you deem best, and to collect all of the rents, issues and profits therefrom, and use so much of such money so collected as in your judgment is best for the care, preservation, maintenance or improvement or repair of the same, and the payment of all taxes, assessments or other charges or expenses upon said premises, and to re-pay to yourself any money which you may have advanced at any time for any of the above purposes, hereby giving and granting to you full and complete power and authority to make such improvements upon said premises as in your judgment are advisable, and to convey, mortgage and encumber said premises, or any part thereof, for the purpose of borrowing or securing money for any of the above purposes.

"*Second*—To sell said premises, or any portion thereof, at any time within ten years from this date, at such terms and for such prices as you deem best, hereby giving and granting unto you full and complete power and authority to convey the said premises, or any part thereof, and to execute, acknowledge and deliver good and sufficient deed or deeds of the same, with or without covenants of warranty.

"*Third*—During the period of ten years from the date of this instrument either to invest or re-invest the net income and the net proceeds of any such sale or sales of said premises, or, in your discretion, to distribute the said funds, or any portion thereof, in the following manner: One-half of all moneys so distributed to be paid to Alfred H. Champlin, Percy Champlin and Bessie Champlin in equal shares, or, in your discretion, to some other person or institution for them or for their benefit or education, as you may deem best; the remaining half of such moneys so distributed to be paid to Robert H. Murray and Louise Murray, children of George W. Murray, and to Laura H. Bevans, Vivian Bevans, Homer Bevans, Jr., and Irene Bevans, children of Jane A. Bevans, in equal shares, or, in your discretion, to some other person or institution for them and for their benefit or education, as you deem best.

"*Fourth*—At the end of said period of ten years from the date of this instrument to transfer, pay over and convey to the said Robert Murray and Louise Murray, Laura Bevans, Edna Bevans

2 5 1 — 3 9

Tracy, Thomas A. M. Bevans, Vivian Bevans, Homer Bevans, Jr., and Irene Bevans, one-half of all money and property belonging to this trust then in your hands, and the other half of such money and property to transfer, pay over and convey to the said Alfred H. Champlin, Percy Champlin and Bessie Champlin, in equal shares.

"*Fifth*—To appoint, by will, a successor in trust to yourself, who shall be vested with the title to all of the said real estate then remaining in your hands as such trustee, and be vested with the same power and authority and charged with the same duties as you are hereby; and I hereby authorize and empower you to devise the title to said real estate for the above uses and purposes.

"In witness whereof I have hereunto set my hand and seal this.............day of April, A. D. 1904."

Dr. Champlin placed the deed and declaration of trust accompanying the same in the hands of Henry L. Wallace, an attorney, who held them until June 25, 1907, when they were delivered by Wallace to Ira B. Meyers, who had them recorded on the following morning, only a few hours before the death of Dr. Champlin, which occurred in the afternoon of June 26, 1907. Dr. Champlin left a last will, by which he appointed Ira B. Meyers his executor, which position Meyers accepted and by virtue thereof came into the possession of $1548 cash which was in the bank to the credit of Dr. Champlin and was part of the proceeds arising from the sale of a portion of the corner lot on Princeton avenue and Sixty-first street. Meyers claimed one-third interest in the Princeton avenue property by virtue of the deed of January 14, 1904, and claimed the absolute ownership of the other two-thirds under the deed of April 23, 1904, and the declaration of trust made by Dr. Champlin, in which it is said that "the property at the corner of Princeton avenue and West Sixty-first street, being the premises first described in said deed, is yours in your own right, absolutely and forever."·

On September 1, 1906, Dr. Champlin, claiming to act under the power given by his wife's will, made a conveyance of the south seventy-five feet of the Princeton avenue property to George E. Cropper for a consideration of $9000

paid by the purchaser. The Champlin residence was located on that portion of the lots sold to Cropper but the residence was not sold. It was moved north off of the seventy-five feet onto that portion of the premises not sold to Cropper. Ira B. Meyers, claiming to be the absolute owner of what remained of the Princeton avenue property, as above stated, on July 26, 1907, executed a deed to Eugene K. and Elizabeth Champlin for the recited consideration of $4500. He took a note from Eugene K. Champlin for $1500 to cover the one-third which Meyers claimed under the first deed but received no consideration for the other two-thirds, but now claims that Dr. Champlin had expressed a desire that his brother, Eugene K. Champlin, and his wife, Elizabeth, should have the homestead in consideration of services which they had rendered to Dr. Champlin.

In May, 1907, George W. Murray negotiated a sale of one tract of the Indiana property, which is described as tract 6 above. Murray, Mrs. Bevans and Dr. Champlin joined in a quit-claim deed conveying this property, which deed did not in any way refer to the will of Mary M. Champlin nor to the power of disposition therein contained. Dr. Champlin's share of the consideration for this sale was $1045. Murray had represented Dr. Champlin in making this sale and charged him $45 for his services, which appears to have been agreed to by Dr. Champlin. This deal was closed and the money paid to Murray only a few days before Dr. Champlin died, and Dr. Champlin's share of the money had not been paid to him by Murray at the time of his death. Meyers, as the executor under Dr. Champlin's will, claimed the title and right to administer upon this money, and also claimed the same right in respect to $1548 which was on deposit to Dr. Champlin's credit in the bank at the time of his death. After Dr. Champlin's death Meyers had expended some money for funeral expenses and probate costs, for which he claimed credit against the funds in his hands as executor of Dr. Champlin's will.

The decree from which this appeal is prosecuted ordered that all of the deeds in question be canceled except the quit-claim deed to the Indiana property and the deed to Cropper; that Meyers pay over the funds in the bank and that Murray account to Mrs. Bevans for $1000 in his hands; that Eugene K. Champlin and his wife deliver possession to Mrs. Bevans of the Princeton avenue home, and declared that Jane A. Bevans and George W. Murray are the owners in fee simple of all of the premises in question, including those located in the State of Indiana as well as the Illinois property, and ordered and directed Meyers to quit-claim all of the property to Mrs. Bevans and Murray.

Appellants' contentions may be stated as follows: (1) That the deeds executed by Dr. Champlin on January 14, 1904, and April 23, 1904, were valid executions of the power conferred upon him by the will of Mary M. Champlin; (2) that a court of equity has no jurisdiction over the $1548 which was in the bank to the credit of Dr. Champlin when he died; that all questions relating to this fund were properly within the jurisdiction of the probate court and should have been settled there; (3) that the $1000 in the hands of Murray, being the proceeds of real estate which was conveyed by quit-claim deed, cannot, in any view, be considered as a part of the estate of Mary M. Champlin; that the quit-claim deed of Dr. Champlin for this property made no reference to the power under his wife's will and was merely a conveyance of his life estate, and that the $1000 was therefore an asset of his estate and that the court should not have made any order in respect thereto; (4) that a court of equity in this State has no jurisdiction to enter a decree affecting the title of lands located in a foreign State, and that the decree, in so far as it relates to the Indiana lands, is erroneous; (5) that the deed by Meyers to Eugene K. Champlin and wife is a valid conveyance, and that their title should not be disturbed. These several contentions will be considered in the order stated.

*First*—The most serious and important contention of appellants is, that the deeds of January 14, 1904, and of April 23 of the same year, were valid executions of the power vested in Dr. Champlin by the will of his wife. The will has already been set out in full, but for the purpose of considering the question of the extent of the power thereby granted it will be necessary to re-examine the provisions of the will somewhat in detail.

The first clause of the will gives Dr. Champlin all of the estate, of whatever character and wherever situated, which the testatrix may own at the time of her decease. It is then provided that this estate is "to be by him used and disposed of during his natural life precisely the same as I might do were I living, hereby giving to my said husband full power to sell, exchange, mortgage, invest and re-invest the same in the same manner as I might do if living, and to use so much of the income and principal thereof as he may desire." It is agreed by all parties that Dr. Champlin only took a life estate in this property. It is not contended that he became the absolute owner of the fee. The second clause of the will is residuary, and disposes of the fee of all of the estate that "shall remain undisposed of by my said husband at the time of his decease." The homestead is devised to Cora Champlin, and "all the residue and remainder of my estate to be equally divided among the following named persons, to-wit: Cora Champlin, my daughter, Jane Bevans, my sister, and George W. Murray, my brother, the issue of each of the three persons last named to receive the share of any of them who may not survive my said husband." The third clause provides that if Cora should not survive Dr. Champlin and should die without issue surviving her, the devises made to her should go to Jane A. Bevans. As already stated, Cora Champlin Meyers died, leaving no issue, before Dr. Champlin died. The residuary estate, therefore, under the will would pass to Jane A. Bevans, who would have two-thirds, plus the homestead,

and one-third, not including the homestead, to George W. Murray. The fourth clause appoints Dr. Champlin executor of the will without bond.

When this will is considered in its entirety and each clause is construed in the light of the other provisions, but little difficulty will be encountered in determining what the testatrix intended. Manifestly, her principal purpose was to provide for the pleasure and comfortable support for her husband during the remainder of his life, and at the same time to preserve her estate, or such part as might remain, for the benefit of the residuary legatees. In order to accomplish this purpose she placed the title in her husband and gave him all the power that was necessary to enable him to use and enjoy the estate for his own comfort and support, and also power to sell, exchange, mortgage, and to dispose of the same and to invest and re-invest the proceeds in the same manner that the testatrix could do if living. The power to sell, however, was not limited to the securing of the funds for his necessary support and maintenance. He was authorized to use so much of the income and principal as he might desire, thereby vesting in him a large discretionary power as to the purposes for which he could use the proceeds of any sale of real estate. Under this authority he had the right, in addition to providing for his necessary support and maintenance, to provide means for his own pleasure and enjoyment, and, if he saw fit, to employ some one to relieve him of all the burdens of caring for and managing the property thus devised. The provisions were clearly made for his own personal benefit and advantage, and did not authorize him to give away any part of the property or to change the residuary devisees so as to defeat the intention of the testatrix as to the final disposition of the remainder of the estate.

At the time of Mrs. Champlin's death the whole of the estate was non-productive, unless it could be said that the homestead was productive. It afforded a home for Dr.

Champlin and was property which could be rented or sold to advantage, but if it be considered as productive it can only be so considered for that reason. The rental value of the whole property, including the homestead, was considerably less than the necessary fixed carrying charges. While the property was non-productive it was nevertheless valuable, and the indications were that if it could be preserved it would materially increase in value in the near future. Dr. Champlin was an old man, broken down in health and unable longer to continue the practice of his profession. He had no property whatever aside from that devised to him by his wife, and no means of obtaining a livelihood other than from the income or sale of this property. The property was encumbered by a mortgage for over $4100 to secure money which Dr. Champlin had borrowed. The greater part of this was borrowed to pay the indebtedness of his wife at the time of her death, and the remainder to pay the taxes and other expenses against the estate and his own living expenses for the year succeeding her death. It was impossible to sell any part of the estate, with the exception of the homestead, without selling it at a sacrifice, and Dr. Champlin at that time did not desire to part with his homestead. The mortgagee was insisting upon the payment of the amount due him. Dr. Champlin was desirous of preserving the estate, and at the same time, on account of his physical condition, desired to be relieved of the responsibility of looking after the estate and of the worry incident thereto. It was under such circumstances that he made the conveyance of January 14, 1904, to Meyers. It is clear that Mrs. Champlin did not intend by her will that her husband should have the fee in this property or that he should exercise the unlimited power of disposition which the ownership of the fee would give. If such had been her purpose it is reasonable to suppose that she would have devised the property to him in fee. The testatrix realized that it would become necessary to convert portions of this un-

productive real estate into cash or its equivalent, not only to enable her husband to properly maintain himself and to provide for his own enjoyment, but also for the purpose of paying the debts of her estate. She contemplated, also, that it might become desirable to sell some part or all of the real estate for the purpose of re-investing the proceeds in other property. Under the will Dr. Champlin was not only given the power to sell, exchange, mortgage and convey the premises and invest the proceeds, but to control and manage the estate and use it for his pleasure, maintenance and support, as he might desire. Being coupled with an interest, it was more than the naked power to sell. *White v. Glover,* 59 Ill. 459.

Dr. Champlin desired to rid himself of the burden of caring for this property and of personally attending to it and at the same time desired to preserve the estate. He therefore proposed to Meyers, his son-in-law, that he would deed him the undivided one-third of all this property, except said tract No. 6, if Meyers would advance the money to pay all of Dr. Champlin's existing indebtedness and would agree to advance the money to pay all expenses for the taxes and other carrying charges of the property in the future until such time as it was deemed desirable to sell a portion of it, when the amount so advanced would be refunded to him, and, further, to take charge of and look after all of the estate, pay one-third of the mortgage indebtedness against the property, pay one-third of all taxes and other charges against it, keep up and maintain the homestead and provide a home there for Dr. Champlin and provide for him his living and traveling expenses. At that time Dr. Champlin desired to leave the city of Chicago and go to some other climate for his health and to recuperate. Meyers did not desire to enter into the contract. He was employed by the University of Chicago as one of its professors, and by assuming the burdens this transaction would entail it would become necessary for him to drop some of

the work in which he was engaged with certain societies of research and thus retard his advancement in his profession. He also had made arrangements for the investment of such money as he had saved up to that time, which plans he did not desire to change, and he did not desire to assume the indebtedness which it would become necessary for him to assume if he accepted Dr. Champlin's proposition. Upon the insistence of Dr. Champlin Meyers finally accepted, taking a conveyance of the undivided one-third of all the estate except said tract No. 6, and, so far as this record discloses, has faithfully kept and performed his part of the contract. While the consideration recited in the deed was $10,000, the actual consideration was as above stated. It appears that at the time of the execution of the deed one-third of the property was worth approximately $10,000. It is not claimed that Meyers practiced any fraud upon Dr. Champlin in procuring this conveyance. It is only claimed that Dr. Champlin exceeded the power vested in him by the will in making the conveyance for this purpose. Meyers took charge of the management of the estate immediately upon the making of this deed, paid off all the existing indebtedness, paid the other charges and expenses as they came due and spent considerable time in looking after the affairs of the estate. He furnished Dr. Champlin with his living expenses and with the means to travel. Dr. Champlin soon after the execution of the deed went to Florida, where he was accompanied by Meyers, who paid the expenses of the trip. He thereafter went to California and later to the State of Pennsylvania, Meyers paying the expenses. It is true that a great deal of the money paid out by Meyers was re-paid to him at the time of the sale of part of the homestead. The account between Meyers and Dr. Champlin was not stated by the master, and, because of the view taken by the court below, was not stated or adjudicated by the decree. The items composing the ac-

count are in the record, and the balance due Meyers, if any, can be readily ascertained.

In *Hughes* v. *Washington,* 72 Ill. 84, we were called upon to construe the will of John A. Washington, a resident of Virginia, who owned real estate in Illinois. Before his death a judgment was rendered against him in the Circuit Court of the United States for the Northern District of Illinois, from which he took an appeal to the Supreme Court of the United States. Shortly thereafter he died, leaving a last will and testament, containing this clause: "I constitute and appoint * * * executors of this my last will and testament; and I hereby empower them, or the survivors or survivor of them, to sell any property of which I may die possessed and which is beyond the limits of Virginia, in such manner, and on such terms, and for such price, as to them or him may seem best for the interest of my children, and to re-invest the proceeds arising from such sale in such other property as they may think best for my children." The executors resided in Richmond, Virginia, and had no means to provide for the prosecution of an appeal to the Supreme Court of the United States excepting the property in Illinois, and we held that they were authorized, under the will and the peculiar circumstances of the case, to make a contract to give an attorney an interest in the real estate in Illinois in consideration of his attending to and protecting the interest of the estate in relation thereto and in attending to the cause in the Supreme Court of the United States, and that such a contract, if fairly made, should be enforced. The situation here is analogous to that in the *Washington case.* There was a substantial compliance with the will of Mrs. Champlin. The same practical result was obtained as if Dr. Champlin had sold a one-third interest in the property for $10,000 and had then employed Meyers and paid him that sum to do those things which he did do under his contract with Dr. Champlin. Such a transaction would have been in

compliance with the will. We are therefore of the opinion that Dr. Champlin was fully authorized by the will of his wife to make the conveyance of January 14, 1904, for the consideration proven. One of the purposes of making this conveyance was to preserve the estate. Dr. Champlin was desirous of securing the services of Meyers and to make the conveyance to him for the reason that Meyers was willing to allow his interest to remain in the estate and would not insist upon a sale or division. He expressed himself, at the time, as being of the opinion that if this arrangement could be made the two-thirds remaining in the estate would soon equal in value the then value of the whole estate. His judgment proved to be correct, as under the management of Meyers it appears that the estate, at the time of Dr. Champlin's death, had greatly increased in value, and two-thirds of the estate was then worth more than the whole of the estate on January 14, 1904, at the time of this conveyance to Meyers. Not only, then, was there no fraud in the transaction, but the residuary devisees of Mrs. Champlin have been benefited by the whole transaction.

Appellants rely chiefly upon *Henderson* v. *Blackburn,* 104 Ill. 227, *Griffin* v. *Griffin,* 141 id. 373, *Lehnard* v. *Specht,* 180 id. 208, and *Fleming* v. *Mills,* 182 id. 464, in support of their contention that this conveyance is invalid and should be set aside. We do not regard these cases as holding anything contrary to what we have here said. The proper construction of a will depends upon its own provisions. While the general principles governing are, of course, the same, they must be applied in accordance with the particular provisions of the will being construed.

We are of the opinion that the deed of January 14, 1904, was a valid conveyance, and the court erred in setting the same aside.

A different situation is presented in respect to the deed of April 23, 1904. This conveyance is without any pretense of consideration, and was clearly an attempt on the

part of Dr. Champlin to divert the fee of this property from the testamentary legatees named in his wife's will and substitute in their places the beneficiaries named in his declaration of trust. It cannot be held that the power to thus dispose of this property is given by the ·will. It is urged that by this deed Dr. Champlin was attempting to carry out the wishes of his wife expressed at a time subsequent to the execution of the will, and a pencil memorandum made by her was introduced in evidence to show that it was her final desire to have her estate distributed in this manner. This unsigned memorandum had no probative force and did not warrant the execution of the second deed. Dr. Champlin took under the will and derived all his power from the will, alone. This conveyance is inconsistent with the testamentary scheme of the testatrix, and if given effect would wholly defeat the residuary devisees to whom she had devised the property. This deed was properly set aside.

*Second*—In regard to appellants' second contention, respecting the $1548 which was in the bank to his credit at the time Dr. Champlin died, but little need be said. This money was all that remained of the $9000 received for the south seventy-five feet of the Princeton avenue property, which was sold to Cropper. This money was in no proper sense an asset of Dr. Champlin's estate. It represented its equivalent in the Princeton avenue real estate, and the court had the same power and jurisdiction to deal with the fund that it would have had to deal with the real estate had it not been sold. It appears that when the decree in this case was rendered Meyers delivered this money into court and paid it over, and the decree was entirely satisfied for that sum. His action in this regard is a waiver of any error so far as he is concerned. But, independently of his action, we are of the opinion that a court of equity having obtained jurisdiction of all the parties in interest and of the real estate involved, had the power to adjust the rights of the

parties in respect to the proceeds of such parts of the real estate as had been sold, in the same manner and to the same extent as though it were dealing with the real estate itself.

*Third*—The third contention of the appellants relates to the $1000 which was held by Murray, being Dr. Champlin's interest in the purchase money for the Indiana real estate sold a short time before Dr. Champlin's death. It will be remembered that the interest of Mrs. Champlin in this property was an undivided share, the balance being owned by Murray, Mrs. Bevans and others; that when Murray negotiated a sale of his interest and that of his sister and Dr. Champlin, they all joined in a quit-claim deed conveying the property to the purchaser. The appellants contend that this $1000 is the proceeds of the life estate, only, of Alfred H. Champlin, and that the deed he signed was not a conveyance of the estate owned by his wife at the time of her death. It is true that the quit-claim deed does not purport, on its face, to be made under the power contained in the will of Mary M. Champlin. It is, however, charged in the bill that this deed was, in fact, intended to be a conveyance of the interest of Mary M. Champlin and was executed under and by virtue of the authority by her will vested in her husband, and this allegation in the bill is admitted by the answer of Ira B. Meyers. If the deed was, in fact, executed by virtue of the power ·given by the will and was so intended and understood by the parties, the mere fact that the power is not referred to in the deed is immaterial. This court, in *Griffin v. Griffin*, 141 Ill. 373, on page 381 of the opinion, said: "Where a person has two or more powers over the same estate, with different circumstances, and does an act and makes no reference to either power, such act will be deemed an execution of that power which will support the disposition. (1 Sugden on Powers, *358.) We think this deed was a valid exercise of the power given in the first clause of the will. It is true that the power there granted was

granted to Mary Griffin, the executrix, in her trust or official capacity of executrix, and that she did not attach the designation of executrix to her signature to the conveyance, or name herself therein as executrix, or refer to any will or power. These, however, in our opinion, are only matters of form, and not material.—*Hamilton* v. *Crosby,* 32 Conn. 342, note."

The quit-claim deed undoubtedly conveyed Dr. Champlin's life estate. We are also of the opinion that it was a good execution of the power under the will, and conveyed the interest which Mary M. Champlin owned at the time of her death. It is not claimed that this conveyance should be set aside as being an improper execution of the power under the will. On the contrary, the bill is framed on the theory that the conveyance is valid and that the deed vested the purchaser with all title which Dr. Champlin was able to convey, both in respect to his own estate as well as that which his wife owned at the time of her death.

Regarding the conveyances as a proper exercise of the power, and conceding that had Dr. Champlin lived he could have properly used this money for his support or could have re-invested the same, still, the money being on hand at the time of his death and not having been used by him for any proper purpose, it must be regarded as representing that amount of undisposed-of assets of the estate of Mary M. Champlin. In other words, the money must be regarded as a substitution for the land from the sale of which it arose, and any equities that would attach to the real estate itself will also exist in the fund. All of the real estate of Mary M. Champlin in the hands of her executor constituted a trust fund, from which the trustee had certain powers under the will. Where a trustee disposes of the trust fund, equity will follow the fund as long as it can be identified, and impress the trust on it regardless of any change that may have been made in the fund. Dr. Champlin, having the power to sell for the purpose of re-

investment under the will, might have sold this or any other portion of the estate and purchased other real estate with the proceeds. Had he done so, the real estate thus purchased would have been impressed with the same trust as the original estate. The mere fact that he happened to have $1000 in cash on hand at the time of his death which had not been re-invested or otherwise disposed of in accordance with the powers of the will does not have the effect of transferring this fund to the individual estate of Dr. Champlin. (2 Pomeroy's Eq. sec. 1048, *et seq.*)

*Fourth*—Appellants' next contention is that the court had no jurisdiction to enter the decree for the reason that it affects real estate located in Indiana. This contention is based upon the well recognized rule that a court of chancery will not entertain a bill where the relief sought makes it necessary that it should act upon real estate which is not within its jurisdiction. The rule is undoubtedly well established that where land is to be affected by a decree, as in partition proceedings, assignment of dower and foreclosure of mortgages or other liens, the court must be able to control the real estate to be affected or it has no jurisdiction of the case. This is the rule both at common law and under the third section of our Chancery act. Courts of equity, which concern themselves chiefly with property rights, act either upon the property itself or upon the person having the possession, control or title thereto, and whether they accomplish their purpose in the one way or the other depends upon the nature of the proceeding and the character of the relief sought. When it is necessary, to accomplish justice between the parties, to act directly upon the property itself, it is indispensable that the real estate to be affected must be within the territorial jurisdiction of the court. While this is a well established rule, it is also equally well settled that where one is owner of land or other property which is not within the jurisdiction of the court, which in equity and good conscience he ought to convey to another, the

party entitled to such conveyance may file a bill in any jurisdiction in which the defendant may be found, and the court may grant the relief by compelling a conveyance to the equitable owner. In such case the decree operates *in personam* and not upon the property involved.

This principle was first recognized by this court in the case of *Enos* v. *Hunter,* 4 Gilm. 211. In that case a bill was filed in Sangamon county to compel the execution of an alleged trust by the conveyance of lands lying in Madison county, the trustee being a resident of Sangamon county. Our statute then provided, as it does now, that suits in equity which may affect real estate shall be brought in the county where such real estate, or the greater part thereof, is situated. The point was there made that the circuit court of Sangamon county had no jurisdiction because the land a conveyance of which was sought to be compelled was located in another county. This court, speaking by Mr. Justice Caton, on page 214, said: "Where the relief sought could be effected by acting directly upon the person of the defendant, the court of chancery has never hesitated to entertain the bill where the defendant is found within its jurisdiction, whether the subject matter of the controversy be within its control or not. Of this character are those cases where the courts have compelled specific performances of contracts for the conveyance of or relating to land which is situate beyond its jurisdiction, and in such case the court will compel a conveyance to be executed in such manner and form as may be prescribed by the laws of the country where the land is situate, and, if need be, in order to effect this they will prevent the defendant from leaving the jurisdiction of the court *pendente lite,* by a writ of *ne exeat.*"

A similar question again arose in the case of *Johnson* v. *Gibson,* 116 Ill. 294, where this court had under consideration the jurisdiction of a court of equity to render a decree setting aside certain deeds made by a trustee to real estate not within the jurisdiction of the court. This court,

in disposing of the question presented, on page 302 quote with approval the language of Marshall, C. J., in *Massie* v. *Watts*, 6 Cranch, 148, as follows: " 'When the defendant is liable, either in consequence of a contract or as trustee or as holder of a legal title acquired by a species of *mala fides* practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found; and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest the jurisdiction. * * * In case of fraud, of trust or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction may be affected by the decree.' The concluding part of this citation is, of course, not to be understood as authorizing a court of equity in any case to render a decree directly affecting land lying in another jurisdiction. In all these cases the principle *æquitas agit in personam* applies, and the decrees in them can only indirectly affect real property. The decree in such cases settles the rights of the parties before the court with respect to some contract, conveyance, trust or fraudulent conduct, and by attachment or other coercive means compels the offending party to comply with the requirements of the decree or simply declares the transaction complained of void, and thereby removes an obstruction to the enforcement of his legal remedies."

The doctrine of these cases was again recognized in this court in *Hayes* v. *O'Brien*, 149 Ill. 403. In that case the bill was filed in Cook county to set aside a deed and to compel the specific performance of a contract, both of which related to real estate in Lake county. Discussing the question of jurisdiction, this court, on page 410, used the following language: "The decree in such cases settles the rights of the parties before the court with respect to some contract, conveyance or fraudulent conduct, and, by attach-

251—40

ment or other coercive means, compels the offending party to comply with the requirements of the decree,"—citing *Enos* v. *Hunter, supra; Cooley* v. *Scarlett,* 38 Ill. 316; *Massie* v. *Watts,* 6 Cranch, 148; *Baker* v. *Rockabrand,* 118 Ill. 365; *Deklyn* v. *Watkins,* 3 Sandf. Ch. 185; *Mitchell* v. *Bunch,* 2 Paige, 615; *Hart* v. *Sansom,* 110 U. S. 151.

There are many other cases where the same rule has been announced in this and other jurisdictions: *Baker* v. *Rockabrand, supra; Craft* v. *Indiana, Decatur and Western Railway Co.* 166 Ill. 580; *Carpenter* v. *Strange,* 141 U. S. 87; *Clopton* v. *Booker,* 27 Ark. 482; *Rogers* v. *Rogers,* 56 Kan. 483; *Lewis* v. *Darling,* 16 How. 1; *Gilliland* v. *Inabnit,* 92 Iowa, 46; *Vreeland* v. *Vreeland,* 49 N. J. Eq. 322; *Phelps* v. *McDonald,* 99 U. S. 298.

The interpretation, as well as the force and effect, to be given the will of Mary M. Champlin, as well as all other transactions affecting the title of the Indiana real estate, may ultimately become a question to be determined by the courts of that State, but that circumstance cannot deprive the courts of this State of their jurisdiction to compel the parties to this action to re-invest the legal title in the parties where it properly belongs, by a decree *in personam,* and enforce such decree by such process as is usual and customary in courts of chancery. The superior court of Cook county had jurisdiction to render the decree appealed from.

*Fifth*—Appellants insist that the conveyance to Eugene K. Champlin of the Princeton avenue homestead stands on a somewhat different basis than the other deeds which have been considered, and that, regardless of what view may be taken with respect to the two deeds to Meyers, the deed to Champlin and his wife should be sustained. It will be remembered that the Princeton avenue property was divided, seventy-five feet of which was sold to Cropper for $9000. The residence was moved onto the remainder of the lots, and the remaining portion was conveyed by Meyers to Eugene K. Champlin and his wife for a consideration of

$4500. The only consideration given by Champlin and his wife for this deed was the note to Meyers for $1500, which was in payment for the one-third interest owned by Meyers individually. It is claimed by appellants that the grantees rendered certain services to Dr. Champlin during the last two years of his life, and that Dr. Champlin expressed the wish that they should have this piece of property because of such services. It is not claimed that the grantees in this deed were innocent purchasers, without notice of the infirmity that existed in Meyers' title. He could convey to them no better title than he himself possessed, and we have already seen that the deed of April 23, 1904, under which Meyers claimed to own two-thirds of this property, was void. Meyers did not have the power that existed in Dr. Champlin to make a conveyance, as that power granted under the will of Mrs. Champlin could not be delegated to Meyers. Meyers could convey to Eugene K. Champlin only such title as he had. It therefore follows that under his deed from Meyers, Eugene K. Champlin became invested only with an undivided one-third of that property.

Appellants make the further point that the bill is multifarious. This question is not properly before us for review. Appellants having answered the bill and having had a hearing on the merits, now raise the question of multifariousness for the first time in this court. That question should have been raised by the demurrer to the bill.

The decree of the superior court was correct in every respect except as to the deed to Meyers of January 14, 1904, as to the conveyance from Meyers to Eugene K. Champlin, and in its failure to state the account between Meyers and Dr. Champlin. Under his contract with Dr. Champlin, Meyers assumed the payment of one-third of the mortgage indebtedness on the property, and agreed to pay one-third of all charges, taxes and special assessments thereafter made against or levied upon the same, and these amounts, together with all advancements re-paid by Dr.

Champlin, should be charged to him in the accounting, while, on the other hand, he is entitled to credit for all sums advanced to Dr. Champlin or paid out on his account under the contract.

For the errors indicated the decree will be reversed and the cause remanded to the superior court, with directions to enter a decree in conformity with the views herein expressed.        *Reversed and remanded, with directions.*

DUNN, CARTWRIGHT and HAND, JJ., dissenting:

We dissent from the conclusion reached by the fourth division of the opinion, that the superior court had jurisdiction to render the decree concerning the land in Indiana. The decree construes the will as vesting in Dr. Champlin a life estate in the land in Indiana with power to dispose of it under certain limitations, decrees that the complainant and George W. Murray are the owners, (the complainant of two-thirds and Murray of one-third of such Indiana land, except certain parcels thereof,) and that all attempted sales, encumbrances and deeds mentioned in the bill (except some which are specified, made by Dr. Champlin in his lifetime or Meyers after his death,) are null and void and of no effect, and they are all canceled as clouds on the title of the complainant and Murray. The court, in making this decree, undertook to decide what was the effect in Indiana of the will upon the title to land situated in that State, what estate in such land was devised by the will and what power of disposition the will gave. The decree is not a mere personal decree, but purports to affect directly the title to the land itself. This is beyond the jurisdiction of an Illinois court. (*Parsons* v. *Millar,* 189 Ill. 107.) The source of the jurisdiction of a court of equity to render a personal decree concerning land situated in a foreign State is made manifest by the decisions cited in the majority opinion. This court said in *Johnson* v. *Gibson,* 116 Ill. 294, that "the decree in such cases settles the rights of the parties before

the court with respect to some contract, conveyance, trust or fraudulent conduct," and no other ground of jurisdiction has ever been suggested. An examination of the cases cited in the majority opinion, which need not be again cited here, will disclose that in all of them the basis of the jurisdiction is declared to be found in some contract, trust or fraudulent conduct. It is not claimed that any such ground of jurisdiction exists here, and in our judgment the decree, so far as it purports to affect the land in Indiana, should be reversed.