## In the Matter of the Estate of BRITON HADDEN, Deceased.

Surrogate's Court, New York County, May 29, 1942.

*Davies, Auerbach, Cornell & Hardy [William J. Carr* of counsel], for the Irving Trust Company, as successor trustee, petitioner.

*Winthrop, Stimson, Putnam & Roberts,* for the Irving Trust Company, as successor trustee under an *inter vivos* trust agreement by William P. Pool and others, respondent.

*George Frankenthaler,* special guardian.

FOLEY, S. A construction of the will and instructions are sought in this accounting proceeding.

The testator died on February 27, 1929, unmarried, leaving him surviving as his sole distributee his mother, Elizabeth Busch Pool. By the second paragraph of his will he gave his residuary estate in trust, with directions. " a) To pay the income thereof & so

much of the principal as she shall want or desire to my mother Elizabeth Busch Pool, during her life time & upon her death to divide the remainder of principal & interest if any equally between my brother Crowell Hadden III & my step father William Pool & to pay the same over to them, in the event however that either of said persons does not survive my mother then the whole to the one surviving." The testator's brother, Crowell Hadden III, died on October 14, 1935. His stepfather, William P. Pool, died on September 1, 1941. His mother still survives and the trust is still in effect.

The accounting trustee contends that under the language of the above-quoted provision the vesting of the remainder in the testator's brother and stepfather was contingent upon their surviving the life tenant, Mrs. Pool, and that since neither survived her, she would be entitled to the remainder as sole distributee of her son as in intestacy.

On the other hand, the special guardian appointed herein maintains that the remainder vested absolutely in Crowell Hadden III and William P. Pool in equal shares, subject only to be divested in favor of the survivor of the two in the event that either predeceased the life tenant, and that since Crowell Hadden III died first, upon his death the remainder vested in William P. Pool as survivor.

I hold that the contention of the special guardian is correct. It is supported by the authorities. (*Matter of McCombs*, 261 App. Div. 449; affd., 287 N. Y. 557; *Matter of Merriam*, 168 Misc. 932.) In *Matter of Merriam* (*supra*) the testator gave one-third of his residuary estate in trust, to pay the income to his sister, Julia M. Haskell, during her lifetime, and upon her death, after payment of the sum of $10,000 out of the principal to a sister-in-law, directed that the principal " shall be divided, paid over and delivered to my said wife, Ellen Rogers Merriam, and my said brother, Walter B. Merriam, in equal parts or shares. In case either of them should be deceased before the death of my said sister, Julia M. Haskell, then the whole remaining balance of said trust fund shall go to and be paid over to the survivor." The brother died before the widow, both, however, predeceasing the life tenant. Similar contentions to those urged here by the trustee were asserted in that case. The defeasance clause there is strikingly similar to that contained in the will of this testator. Surrogate DELEHANTY there held that the word " survivor " under the defeasance clause referred to the survivor of the widow and brother and did not refer to survivorship by them of the life tenant. In the very recent Court of Appeals case of *Matter of McCombs* (*supra*) the testator gave a life estate in certain real property to his wife and made her the life beneficiary of a trust

of his personal property. On the death of his wife he gave his residuary estate to two sons share and share alike. He then provided in the ninth paragraph of his will: " Should either of my said sons die before my said wife, leaving no issue him surviving, then and in that case, I give, devise and bequeath said deceased son's share in my property hereby devised or bequeathed to the survivor." It was there held " that the effect of the ninth paragraph of the will was ' not to convert these vested remainders into contingent remainders, but to render them subject to divestment as to one son in the event that he failed to survive the other during the lifetime of their mother, leaving no issue ' * * *."

I accordingly hold that on the death of Crowell Hadden III, the remainder of the trust vested in the survivor of them, William P. Pool, or his estate.

The instructions sought in this proceeding relate to the power of the trustee under the terms of the will to pay and deliver to the life tenant, Mrs. Pool, the entire balance of the trust fund in its hands amounting to approximately $713,000. The life tenant has requested such delivery to her on the theory that by the direction to pay her the income of the trust and so much of the principal " as she shall want or desire," the testator intended to give her an unlimited right of invasion of the principal, to the extent even of withdrawing the whole trust fund.

The special guardian takes the position that such invasion of principal would amount to a destruction of the trust, a result not intended or contemplated by the testator as revealed by the language of the will. The contention of the special guardian is sustained upon the authority of *Vincent* v. *Rix* (248 N. Y. 76), a leading case in this State, which I hold to be controlling upon the question.

In that case the testator gave his entire residuary estate " unto my beloved wife, Julia Rix, to be her absolute property, provided, however, that upon the death or re-marriage of my said wife, whatever of property or estate she may have received from me and which shall remain at that time undisposed of, I give, devise and bequeath unto my heirs at law and next of kin * * *." Judge CRANE, writing for the court, said:

" * * * No doubt under this provision of the will Julia Rix could dispose of the property for her needs and requirements and her judgment in this matter would be conclusive. A very broad and liberal interpretation would be given to her power of disposal. We need not try to forecast all the instances in which such a legatee could dispose of the property. We are dealing here with the sole question whether on approaching death she could give it away absolutely and without any consideration. We have already held

that she could not dispose of the property coming to her from her husband by will. Here was an attempted gift made at the same time that she made her will, and within thirty days of her death. It has all the indicia of an attempted gift in place of a testamentary disposition. If the bequests by will were void, so likewise should be this attempted gift.

" * * * In this will the testator says that the property he gives his wife is to be her absolute property, provided, however, that upon her death or remarriage, whatever shall remain undisposed of shall go to his heirs. What does he mean by 'remain undisposed of?' I am inclined to think the intention was to limit the power of disposition for her use, comfort, benefit or support, and that these words should have a very broad and liberal interpretation, so much so that Julia Rix would probably be the sole judge of what was for her benefit and enjoyment. Such disposition, however, and such user would call for the exercise of good faith upon the part of Julia Rix, and would not include a gift of the property in view of approaching death solely for the benefit of her blood relatives in no way connected with her husband, Asa W. S. Rix. * * *

" The tendency of the courts to place these reasonable limitations upon the power of disposition under such a will may be gathered from the following cases. (*Peck* v. *Smith*, 183 App. Div. 336, p. 343; revd., 227 N. Y. 228 on other grounds. See, also, cases cited above and the following: *Goodrich* v. *Henderson*, 221 Mass. 234; *Richards* v. *Morrison*, 101 Me. 424; *Presbyterian Church* v. *Mize*, 181 Ky. 567; *Bevans* v. *Murray*, 251 Ill. 603; *Griffin* v. *Kitchen*, 225 Mass. 331; *Farlin* v. *Sanborn*, 161 Mich. 615; *Gibson* v. *Gibson*, 239 Mo. 490.) " To the same effect are the cases of *Terry* v. *Rector, etc., St Stephen's Church* (79 App. Div. 527) and *Wells* v. *Seeley* (47 Hun, 109). Even stronger indications are present in *Vincent* v. *Rix* (*supra*) of intent to make an absolute gift of the estate to the life tenant than here, since the sole custody of the assets were given to her as legal life tenant without the intervention of a trustee.

The reasonable limitations upon the right of invasion of the principal of the trust referred to by Judge CRANE in *Vincent* v. *Rix* (*supra*) must be applied to the language of the will here. In order, therefore, to determine the amount which Mrs. Pool may in good faith want or desire for her use, comfort, benefit or support, I have placed this matter upon my calendar for a hearing on the 16th day of June, 1942, at 11:30 A. M. Proceed accordingly.